UNITED STATES of America

v.

**Omar Mohammed Ali REZAQ a/k/a Omar Marzouki a/k/a Omar Amr, Defendant.**

Civ. A. No. 93–0284CR.

United States District Court, District of Columbia.

July 27, 1994.

Joseph Bernard Valder, Scott J. Glick, U.S. Attys. Office, Washington, DC, for plaintiff.

Santha Sonenberg, Robert L. Tucker, Federal Public Defenders Office, Washington, DC, for defendant.

### MEMORANDUM OPINION ON DISCOVERY

LAMBERTH, District Judge.

This case comes before this court on various discovery motions filed by both parties. Upon consideration of these motions and related papers, this court shall grant some but not all of defendant's discovery requests, place defendant's discovery under a protective order, permit the United States to file submissions *in camera* and under seal in support of a further CIPA motion, and call a pre-trial hearing on classified information in this case. The court shall also order defendant to return the original of an unredacted passenger list the United States inadvertently gave him, direct defendant to submit to fingerprinting, quash defendant's subpoenas, schedule the exchange of witnesses statements, order reciprocal discovery, and direct defendant to cut his hair and shave before trial. A separate order shall issue this date.

### I.

### BACKGROUND

Defendant has been indicted on one count of air piracy for allegedly hijacking Egyptair Flight Number 648 in November 1985, killing two of the passengers, and attempting to kill three others.

According to the government, defendant Rezaq and two others hijacked Flight Number 648 while it was en route from Athens, Greece to Cairo, Egypt on November 23, 1985. Defendant forced the plane to land in Malta. Egyptian commandoes attempted a rescue the next day, during which 57 passengers and one of the hijackers were killed. Maltese authorities arrested defendant and charged him with violations of Maltese law. Defendant pled guilty to seven of the nine charges that the Maltese government brought against him. The other two charges were dropped in exchange for his guilty plea. He was sentenced to twenty-five years' incarceration, but Malta released him on or about February 25, 1993, after he had served only seven years, and let him board an airplane to the Sudan via Ghana, Nigeria and Ethiopia.

Defendant never reached his final destination. First, Ghana detained him for four-and-a-half months for violations of the Hague Convention, and then released him to his original itinerary on or about July 15, 1993. When defendant landed in Nigeria, Nigerian authorities escorted him to an airplane in which special agents from the United States Federal Bureau of Investigation were waiting.

Less than two hours later, a federal grand jury in the District of Columbia returned an indictment charging him with air piracy. Defendant arrived in the United States within the next twenty-four hours, where FBI agents executed an arrest warrant that had been obtained on February 12, 1993, and took him to the federal courthouse in the District of Columbia. Shortly thereafter, the grand jury returned a superseding indictment, on which defendant was arraigned.[1]

Defendant has since filed a motion to compel discovery pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Rule 16 of the Federal Rules of Criminal Procedure. The government opposes much of defendant's requested discovery and has moved for a protective order, for leave to file submissions *ex parte, in camera* and under seal in support of its anticipated motion to limit discovery under the Classified Information Procedures Act,[2] and for a pre-trial CIPA conference. These motions are all discussed in Section II, below. (The United States has also filed several other discovery motions, all of which are decided in an order accompanying this memorandum opinion. Some of them are discussed in Section III, below.)

## II.

## DEFENDANT'S MOTION TO COMPEL AND UNITED STATES' CIPA MOTIONS

Defendant's motion to compel seeks disclosure of several pieces of evidence held by the government. The United States opposes disclosure of much of this information on the grounds of irrelevance and national security.

The starting point of this court's inquiry is whether each piece of evidence defendant seeks is discoverable under Rule 16 of the Federal Rules of Criminal Procedure or *Brady.* If not, the evidence shall not be disclosed. If, however, the evidence is indeed generally discoverable, the second step in this court's inquiry is whether the sensitive nature of the evidence demands special treatment.[3] This court takes the first step first.

---

1. On July 21, 1994, a grand jury returned a second superseding indictment making some small changes to the prior indictment.

2. 18 U.S.C.App. III ("CIPA").

3. This procedure is fashioned from the rule of *United States v. Yunis,* 867 F.2d 617, 621–24 (D.C.Cir.1989) (*Yunis II*), as restated in *United States v. Yunis,* 924 F.2d 1086, 1095 (D.C.Cir. 1991) (*Yunis III*).

    In the *Yunis* cases, the Court of Appeals for this Circuit established that under Section 4 of CIPA, a district court's first step is deciding whether the evidence that defendant sought is discoverable under the "general law of discovery." *Yunis II,* 867 F.2d at 621; *Yunis III,* 924 F.2d at 1095. If so, the second step is determining how to treat a governmental claim that the information is privileged, by deciding whether the government has made a facially valid claim of privilege and whether the evidence in question should nevertheless be disclosed as material to the defense. *Yunis II,* 867 F.2d at 623; *Yunis III,* 924 F.2d at 1095.

A.

## DEFENDANT'S MOTION TO COMPEL DISCOVERY

On July 22, 1993, defendant sent the prosecution a letter detailing several discovery requests. The government complied with some requests and refused others. In his motion to compel discovery, defendant seeks disclosure of the evidence pertaining to the requests that the government has refused, as well as some requests that defendant is making for the first time. (This procedure was established at a December 15, 1993 status conference.) Defendant's motion contains thirteen requests, some made under *Brady* and some under Rule 16. The two types of requests are analyzed in turn below.

### 1.

### *BRADY* REQUESTS

Under *Brady*, the prosecution must disclose evidence that is favorable to defendant and is "material either to guilt or to punishment." *Brady*, 373 U.S. at 87. The materiality of evidence depends upon its importance to the case: "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Specific requests for particular evidence, like the requests at issue here, require the prosecutor to turn over *all* exculpatory evidence, not merely evidence that is "obviously" exculpatory. *United States v. Agurs*, 427 U.S. 97, 104–07, 96 S.Ct. 2392, 2398–99, 49 L.Ed.2d 342 (1976). Defendant's two contested *Brady* requests, Request Nos. 6 and 7, are analyzed below.

---

4. Letter of August 6, 1993 from Assistant United States Attorney Joseph Valder to Assistant Federal Public Defenders Santha Sonenberg and Beth Brinkmann, responding to informal discovery letter, at ¶ D(3) (Exhibit B to Def.'s Motion to Compel).

5. The prosecution states that "is not aware of any person who misidentified defendant Rezaq." Opp'n to Def.'s Motion to Compel at 19.

*Request # 6*

Names, last known addresses and phone numbers of all individuals who were asked to make an identification of the defendant in connection with the events surrounding the hijacking of Egyptair Flight 648 and who were unable to make such an identification, and the names, last known addresses and phone numbers of all other individuals who were present when any such unsuccessful identifications were made.

This *Brady* request shall be denied. There are no known mis-identifications. Non-identifications—which are neutral and non-exculpatory—are not covered by *Brady*. Should the government discover any information about mis-identifications, it shall immediately inform the court.

■ At issue in this request is whether non-identifications are material and thus subject to disclosure. Eyewitnesses to the alleged hijacking appear to have had five opportunities to identify defendant. According to the government,[4] Maltese authorities may have used defendant's photograph in a "photographic identification procedure" while defendant was in the intensive treatment unit of St. Luke's Hospital in Malta. They may also have conducted a large scale line-up, in which they walked surviving passengers and/or crew members through the intensive treatment unit and asked them to identify the hijackers. Third, Maltese officials compiled a photographic array including defendant's photograph and sent it to the United States for a letter rogatory procedure involving one of the victims. Fourth, some surviving passengers may have identified defendant when they returned to Malta to testify. Lastly, the FBI conducted a photospread identification. In none of these procedures did eyewitnesses make a mis-identification.[5] However, some of the eyewitnesses may have been unable to make an identification at all.[6]

---

6. The prosecution states that "[t]he United States has no information at this time that there is in fact such a witness [who failed to identify anyone].... [T]here may be a very small number of witnesses who never had a meaningful opportunity to see defendant's face ... [The United States] expects to obtain more information on this in the course of the Republic of Malta's further compliance with the Letter Rogatory." Opp'n to Def.'s Motion to Compel at 19 n. 14.

Defendant argues that these non-identifications (if they exist) must be disclosed.

Yet courts have found this type of evidence not clearly exculpatory. *See, e.g., United States v. Rhodes,* 569 F.2d 384, 388 (5th Cir.), *cert. denied,* 439 U.S. 844, 99 S.Ct. 138, 58 L.Ed.2d 143 (1978) (non-identification is not "obviously exculpatory" material that must be disclosed to a defendant who makes a non-specific *Brady* demand); *United States v. Jones,* 648 F.Supp. 225, 240 n. 11 (S.D.N.Y. 1986) (failures to identify are not obviously exculpatory). Although defendant's specific *Brady* requests entitle him to all exculpatory evidence in this case and not just the clearly exculpatory evidence, this court finds that a witness's remark that he is simply unable to finger defendant as one of the hijackers is a neutral, not an exculpatory statement. Accordingly, it is not *Brady* material and need not be disclosed.

*Request # 7*

Prior statements of witnesses to the incident whom the government does not intend to call in its case and who have given statements that are contradictory or inconsistent in material particulars with those statements given by or anticipated testimony of witnesses whom the government does expect to call.

■ Defendant is entitled to disclosure of some but not all of this *Brady* request. Once the government has interviewed a witness to the incident whom the government does not intend to call in its case, the government must review what the witness said and disclose to defendant any statement that would disclose the perjury of key prosecuting witnesses [7] or that would seriously erode the credibility of prosecuting witnesses whose credibility is determinative of guilt or innocence.[8] The remainder of defendant's request is denied. The prosecution need not disclose any other statements of non-testifying witnesses, even if those statements could lead to inferences of defendant's innocence.[9]

■ In the absence of any specific facts to which to apply these rules, the court must leave to the prosecution the responsibility of determining what must be disclosed. The prosecution should remember, however, that it "has the affirmative duty to resolve doubtful questions in favor of disclosure." *U.S. v. Whitehorn,* 710 F.Supp. 803, 827 (D.D.C. 1989), *rev'd on other grounds,* 888 F.2d 1406 (D.C.Cir.1989). The penalty for failing to disclose *Brady* material, of course, may be the setting aside of a conviction on appeal.

## 2.

## RULE 16 REQUESTS

Federal Rule of Criminal Procedure 16(a)(1)(C) provides as follows (emphasis added):

Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and *which are material to the preparation of the defendant's defense* or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

In the five contested Rule 16 requests that follow, the parties dispute whether the re-

---

**7.** *See United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1975) (*Brady* is violated where prosecution fails to disclose evidence that it knows or should know will demonstrate perjury by a government witness).

**8.** *See Giglio v. United States,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) (failure to disclose plea bargain with sole witness linking defendant to the crime violates *Brady,* since the plea bargain could seriously undermine credibility of the government witness whose credibility is important to the government's case).

**9.** *See United States v. Comosona,* 848 F.2d 1110, 1115 (10th Cir.1988) (defendant not entitled to *Brady* disclosure of statement of non-testifying witness, even if the statement might have led to an inference that defendant was innocent); *United States v. Harrison,* 679 F.2d 942 (D.C.Cir. 1982) (statement of non-testifying witnesses that would neither disclose perjury nor reveal exculpatory evidence are not subject to disclosure under *Brady* ).

quested evidence is "material" under Rule 16.[10]

As this court has ruled before, "[t]he central requirement of Rule 16(a)(1)(C) is that the defendant must show that the documents or evidence sought to be discovered are material to the preparation of his defense. Although this hurdle is not a high one, 'the evidence must not simply bear some abstract logical relationship to the issues in the case.... There must be some indication that pretrial disclosure of the disputed evidence would [enable] the defendant significantly to alter the quantum of proof in his favor.' Nonetheless, the documents need not directly relate to the defendant's guilt or innocence. Rather, they simply must 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony or assisting impeachment or rebuttal.'" *U.S. v. George,* 786 F.Supp. 11, 13 (D.D.C.1991) (RCL) (citations and internal quotations omitted).

*Request # 1*

Last known addresses and phone numbers of all passengers and crew of Flight 648.[11]

The government has already turned over to defense the names of the passengers and crew, and it seeks to withhold the "few addresses and very few telephone numbers" that it possesses of the passengers and crew (United States' Opp'n to Def.'s Motion to Compel at 6 ¶ 2). The prosecution has no obligation to reveal this information to the defense. Defendant has not established its relevance to his defense.

Defendant seeks this information under Rule 16, at least to the extent that this information is contained in documents controlled by the government. To compel disclosure under Rule 16(a)(1)(C), there must be a *"strong* indication that they will play an *important* role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment

and rebuttal." *U.S. v. Felt,* 491 F.Supp. 179, 186 (D.D.C.1979) (emphasis added). The question here is whether defendant has shown a "strong indication" that the requested information will lead to "important" evidence assisting impeachment or rebuttal.

■ Defendant argues that with the passengers' and crew's addresses and telephone numbers, he can locate, interview, and put on the stand those eyewitnesses who might contradict the government's evidence as to identification and the hijackers' actions. Defendant fears that without this information, the jury will hear only those eyewitnesses who can attest to evidence favorable to the prosecution.

Yet defendant's hope to turn up impeaching evidence with this requested information is simply too speculative. Defendant has offered the court nothing to show that his inquiries will actually lead to impeaching evidence. Further, defendant's fear that the jury's view of the case will be skewed in favor of the prosecution is somewhat overstated. The prosecutors are already bound to disclose to the defense many impeaching statements they uncover as they interview witnesses to the incident. (*See supra* at Section II(A)(1), Request No. 7 of Defendant's Motion to Compel.)

Defendant's argument that *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), demands disclosure is a red herring. *Roviaro* applies only when the government invokes the informant's privilege to conceal the identity of someone who has given police criminal information. *See id.* at 59, 77 S.Ct. at 627. Disclosure is required under *Roviaro* when the defendant can show that "an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause" such that it outweighs "the public interest in

---

**10.** The government has already given defendant copies of all documents that defendant originally possessed, and has promised to give defendant all documents that it intends to use in its case-in-chief. (Def.'s Motion to Compel at 2.) Only the remaining Rule 16 category—documents "material to the preparation of the defendant's defense"—is at issue.

**11.** Defense has withdrawn its request—originally included here—for the names of the approximately ten passengers and crew whom the government will call as witnesses in the motions hearings and trial. Reply in Support of Def.'s Motion to Compel at 7.

protecting the flow of information." *Id.* at 60–61, 62, 77 S.Ct. at 627–28, 628. In the present case, the government has never chosen to invoke the privilege. Contrary to defendant's own argument, defendant need not show that his need for the information outweighs the government's need to keep it secret. Defendant's sole burden is to show simple materiality under Rule 16. As shown above, defendant has failed to do that.

Defendant's last argument is also a red herring. Defendant argues that the government "has no right" to delete from the a key document in the letters rogatory—which the prosecution has already agreed to disclose to defense—the addresses and telephone numbers of eyewitness passengers and crew. (Def.'s Motion to Compel at 10.) The key letters rogatory document does not even contain any passenger's or crew member's addresses or telephone numbers. It contains dates of birth and passport numbers of the passengers and crew, which the government has indeed withheld, but not addresses or telephone numbers. (*Compare* Exhibit C to Def.'s Motion to Compel (containing a redacted version) *with* Exhibit D to Def.'s Amended Motion to Compel (containing an unredacted version stating the dates of birth and passport numbers of the passengers, but not their last known addresses or telephone numbers).)

*Request # 8*

> Names, last known addresses and phone numbers of any officials of the Maltese government or any other government who were witnesses present during defendant's interrogation of December 3, 1985, other than those already revealed to defendant.
>
> Names, last known addresses and phone numbers of anyone who attempted to interrogate defendant between the time of his apprehension on or about November 24, 1985 and his December 3, 1985 interrogation.[12]

12. The original request # 8 has been partially withdrawn. (Reply in Support of Def.'s Motion to Compel at 10.) The request as stated here is what remains.

13. The government also intends to introduce another, later statement of defendant's, and defen-

The prosecution has already given defendant a copy of the results of a Maltese interrogation that occurred on or about December 3, 1985. That document included the names of the interrogators and the translator, but not their last known addresses or phone numbers. It is not clear whether the documents even listed the names of all the people present at that interrogation. Defendant's modification of this discovery request (*see supra* note 12) and the government's partial satisfaction of it leave only a small balance of remaining discovery in dispute: whether the government must disclose the addresses and phone numbers of the known interrogators and the translator; whether the government must disclose the names, addresses and phone numbers of other government officials present during the interrogation; and whether the government must disclose the names, addresses and phone numbers of others who attempted to interrogate him before December 3, 1985. Defendant is not entitled to disclosure of any of this information.

Defendant argues that the information contained in the documents requested here is germane to his motion to suppress statements he allegedly made in Malta. Defendant states that the government intends to introduce the statement he allegedly made on December 3, 1985 while hospitalized in Malta, and the discovery sought here will support his motion to suppress that statement.[13] With the names, addresses and phone numbers, defendant can interview witnesses and possibly secure their testimony.

Yet the names and addresses of the interrogators, the translator, and the silent observers (if any) of the December 3, 1985, interrogation, or of prior interrogations, are not material to defendant's case. It is true that the information gained from witnesses might have some abstract connection to the defense. They might testify, say, to foul play during or before the interrogation. An affi-

dant's motion to suppress seeks to suppress this statement as well. However, defendant's modified Request No. 8 (*see supra* note 12) excludes documentary evidence that would apply to this second statement.

davit from defendant swearing that foul play tainted his incriminating statements might have provided such a foundation. Yet nothing of the sort was filed, and defense offers the court nothing more than speculative hopes that the evidence requested here will help defendant track down something that will help his case. Without some indication that this discovery will lead to evidence that would significantly benefit defendant's case, the discovery cannot be allowed.

*Request # 9*

> All documents concerning any advice, assistance requests or any other communication between the government of the United States and Malta concerning the apprehension, investigation, trial, or sentencing of the defendant in Malta.

> The names, last known addresses and phone numbers of any individual in the government of the United States or the government of Malta known to have information concerning the role the United States played in the apprehension, investigation, trial or sentencing of the defendant.

■ Defendant is entitled to this information. Its materiality to the defense may be suspect, but because the government does not argue that the requested evidence is not "material" under Rule 16, this court will take the point as conceded. The government's sole argument—that the documents sought would support a meritless argument—does not persuade this court to deny this request.

Defendant's discovery request is tailored to develop evidence that will offer material support for one of his double jeopardy defenses contained in his motion to dismiss. The information will show, he hopes, that the United States was so extensively involved in the Maltese prosecution that defendant has been prosecuted not by two separate sovereigns—first Malta, and now the United States—but twice by the United States in violation of the double jeopardy bar.

The government argues that defendant is not entitled to this discovery because no matter what evidence is revealed under this request, defendant's double jeopardy argument fails as a matter of law. (United States's Combined Response in Opp'n to Def.'s Motions to Dismiss at 25–31.) Yet defendant's argument is not wholly unsupported by legal authority. *See, e.g., Bartkus v. Illinois,* 359 U.S. 121, 123–24, 79 S.Ct. 676, 677–79, 3 L.Ed.2d 684 (1959) (dicta indicating that the Double Jeopardy Clause may be violated if one sovereign's prosecution is "merely a tool" or a "sham and a cover" of another sovereign's prosecution for the same offense). If defendant can discover evidence sufficient to show that Malta's prosecution was merely a tool of America's prosecution, defendant's argument might well succeed. Ruling against the merits of his double jeopardy argument now would be premature, since at the moment defendant's double jeopardy argument is a plausible defense. Because the government does not deny that the documents requested would offer material support to that argument, the request shall be granted.

*Request # 10*

> All documents made at any time that reflect the intentions or position of the United States concerning whether to pursue the prosecution of Mr. Rezaq at the conclusion of the proceedings in Malta, including any statements indicating whether the United States intentions were in any way related to the result of the proceeding in Malta. This request also includes any documents generated after the United States learned of Mr. Rezaq's impending release from prison in Malta.

> The defendant also seeks the names, last known addresses and phone numbers of any official of the United States government who spoke with officials in Malta concerning the intentions of the United States relative to the prosecution of Mr. Rezaq and the names of the official(s) in Malta with whom such United States official(s) spoke.

Defendant is not entitled to this information under Rule 16. He argues that this evidence will support his motion to dismiss the indictment on the ground that the indictment breaches an agreement by the United States not to prosecute Mr. Rezaq here if he were prosecuted in Malta. According to defendant, the U.S. Department of State agreed in December 1985 not to prosecute Mr. Rezaq in the United States if Malta

prosecuted him, and he pled guilty in Malta in reliance upon that American promise.[14]

Yet defendant has produced little to convince this court that this defense is not created out of thin air. The sole bit of evidence supporting the facts that he alleges is a December 14, 1985 diplomatic note about Mr. Rezaq presented by the United States to Malta.[15] Although it states that defendant was then a subject of a federal arrest warrant for hostage-taking and asks Malta to detain him for purposes of extradition should he become eligible for release in Malta, the diplomatic note stops far short of suggesting any agreement that a Maltese prosecution would foreclose an American prosecution. Defendant clearly had the power to lay a better foundation for his agreement-not-to-prosecute defense by, say, collecting affidavits from the Maltese officials who (he claims) told him about the agreement not to prosecute and who induced him to rely on it. Instead, defendant has asked this court to speculate that his defense is grounded in reality, and then to open the government's files to let defendant find evidence to support it. Because Request No. 10 is not relevant to any defense that has more than speculative applicability, defendant is not entitled to this discovery.

*Request # 12*

All papers and documents relating communication between the United States and the governments of Malta, Ghana, and Nigeria concerning the release of Mr. Rezaq from Malta, his subsequent transportation to and detention in Ghana, and his subsequent transportation and refusal of entry to Nigeria.

The defendant also seeks the names, last known addresses and phone numbers of individuals in the United States government having first-hand knowledge of any such oral communications and the same identifying information for officials in the governments of Malta, Ghana, or Nigeria with and to whom such communications were made.

Defendant is entitled to disclosure of this information under Rule 16(a)(1)(C). As it did in Request No. 9, the government has declined to contest the materiality of the information sought here. The United States' sole argument is that the defense the discovery is designed to support—defendant's motion for dismissal on Speedy Trial Act grounds—fails as a matter of law, but the government's case is not strong enough to warrant denying the Speedy Trial Act motion and this discovery.

■ Under the Speedy Trial Act, 18 U.S.C. § 3161(b), any indictment must be filed against a person within thirty days of arrest. According to the defense, the United States government colluded with Ghana to detain Mr. Rezaq for four months after he was released from Malta. In effect, the United States had Mr. Rezaq arrested—albeit by Ghanian agents—more than thirty days before he was indicted.

■ The government insists that this discovery should be denied because even if defendant could discover facts to support his story, his claim would fail as a matter of law. Yet the government has not made its case. The government cites no case to support its central proposition that Ghana's actions can never be attributed to the United States as a matter of law even if defendant can show collusion. The government's alternative argument—that the delay should be excused because it was caused by defendant's unavailability for trial—does not foreclose discovery, either. If defendant can discover evidence showing that the United States was responsible for keeping Mr. Rezaq detained in Ghana, it is hard to see why defendant's unavailability would excuse the United States' delay. At bottom, the government's case against this Speedy Trial Act defense is a factual one: that Ghana detained Mr. Rezaq independent of the United States' influence. Its factual case may be correct, but it cannot show as a matter of law that this defense will fail.

Because the Speedy Trial Act does not fail as a matter of law, and because the govern-

---

**14.** Def.'s Motion to Dismiss the Indictment for Governmental Violation of Promise Not to Prosecute at 2.

**15.** Attachment B to Exhibit 1 to United States' Combined Response in Opp'n to Def.'s Motions to Dismiss.

ment does not contest the materiality of defendant's requested information, defendant is entitled to this discovery.

### 3.

### REMAINING REQUESTS

For a variety of reasons, defendant has withdrawn his remaining discovery requests, as stated below.

*Request # 2*

Names and last known addresses and phone numbers of all Egyptian troops who participated on November 24, 1985 in Malta in the operation that attempted to rescue the passengers and crew held hostage on Egyptair Flight 648.

Defendant made this request in his discovery motion, but he stated in his reply that he wished to withdraw it subject to later renewal if, at a later date, he finds a renewed need for this information. Defendant is granted leave to withdraw this request on these conditions.

*Request # 3*

Complete copy of the letters rogatory material received from Malta, including copies of any statements of witnesses contained within the letters rogatory material.

After defendant made this request in his discovery motion, he was able to obtain many of the requested statements on his own. What he has not been able to acquire on his own he now abandons by asking in his reply to withdraw this request. Defendant is granted leave to withdraw this request.

However, because some of the statements defendant has found on his own are in Maltese and perhaps Arabic, the government shall be ordered to produce the English translations of any such statement that the government possesses immediately upon production of the statement by the defense, except for those witness statements that fall under the Jencks Act. The reason is economy. The government, as prosecutor, is already spending money to translate these statements; the government, as court-appointed defense counsel, should not be forced to spend the same sums to translate those statements again.

*Request # 4*

List of all witnesses the government intends to call in this case in either the trial or punishment phase of this trial.

Defendant made this request in his discovery motion, but stated in his reply that he wished to withdraw it. Defendant is granted leave to withdraw this request.

*Request # 5*

Any evidence that individuals other than Mr. Rezaq committed acts of violence in connection with the hijacking of Egyptair Flight 648, including specifically any evidence that someone other than Mr. Rezaq shot at or otherwise injured any of the passengers or crew during this incident.

Defendant made this request in his discovery motion, but stated in his reply that he wished to withdraw it since the government has responded to it. Defendant is granted leave to withdraw this request.

*Request # 11*

All documents concerning any request for extradition of the defendant from Malta to the United States and all documents concerning any action taken on such request by either Malta or the United States.

Defendant made this request in his discovery motion, but stated in his reply that he wished to withdraw it since the government has complied with it. Defendant is granted leave to withdraw this request.

*Request # 13*

Information relating to whether there has been any wiretapping or other electronic surveillance of any conversation to which the defendant was an "aggrieved party" within the meaning of 18 U.S.C. § 2510(11). If so, the defendant requests information regarding the circumstances of such surveillance, including the date, the place, the time of such, whether the surveillance was conducted pursuant to a court order, etc. The defendant seeks this information regardless of whether the government intends to use any such intercepted communication in its case against the defendant.

Defendant made this request in his discovery motion, but stated in his reply that he

wished to withdraw it since the neither the government nor defendant is aware of any improper electronic surveillance. Defendant is granted leave to withdraw this request.

## B.

### UNITED STATES' MOTION FOR PROTECTIVE ORDER

■ All classified material contained in the discovery granted pursuant to defendant's motion to compel shall be disclosed only to defendant's counsel, not to defendant himself, unless this court exempts specific evidence from this bar in the future. The United States has moved for such a protective order, and defendant has no significant objections to it. Rule 16(d)(1) of the Federal Rules of Criminal Procedure and Section 3 of CIPA both authorize this court to issue protective orders of this kind to prevent disclosure of sensitive information that could compromise national security.[16] The details of this protective order are set forth in the separate order that shall issue this date.

The United States has reason to fear disclosing to Mr. Rezaq the sensitive information at stake here.[17] Mr. Rezaq is alleged to be a terrorist with connections to an international terrorist network, and he is accused of committing political crimes against Americans as part of a campaign to destroy the United States. There is no reason to think

that defendant can be entrusted with national secrets—Mr. Rezaq has never had, nor is ever likely to have, a security clearance. Nor is there any reason to think that defendant could be easily prevented from disseminating such secrets if he learned of them, since English-speaking prison officials would have difficulty monitoring telephone calls and mail in Mr. Rezaq's native language. Clearly, disclosing the sensitive evidence to Mr. Rezaq poses a risk to national security.

The protective order, which generally limits disclosure to Mr. Rezaq's counsel, avoids that harm without prejudicing his defense. Even without Mr. Rezaq's personal knowledge of national secrets at issue, defendant's counsel can construct most of his defense perfectly well. The sensitive information is generally more useful to his counsel than to him, since it is being sought more to support his legal defenses than to rebut any facts relating to the commission of the crime.

To the extent that defendant himself does need to know the information for his defense, paragraph 10(f) of the protective order permits warranted disclosures.[18] Under paragraph 10(f), defendant's counsel may seek the court's permission to disclose certain evidence to defendant, and the United States may oppose such disclosure. This limited method for disclosing evidence to Mr. Rezaq satisfies defendant's counsel [19] and this court.

---

16. Section 3 of CIPA provides as follows:
   Upon motion of the United States, the court shall issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court of the United States.
   Rule 16(d)(1) provides in relevant part that "[u]pon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate."

17. Although the court has not yet received or reviewed any of the evidence in question, for the moment the court takes the government at its word that the evidence touches on national security, especially since defendant does not challenge that in his opposition to the protective order motion.

18. Paragraph 10(f) provides as follows (emphasis added):

The defense shall not disclose, *without prior approval of the Court*, the contents of any classified documents or information to any person not named in this Order—including defendant—except the Court, Court personnel and the attorneys for the United States identified by the Court Security Officer as having the appropriate clearances and the need to know. Counsel for the United States shall be given an opportunity to be heard in response to any defense request for disclosure to a person not named in this Order. If preparation of the defense requires that classified information be disclosed to persons not named in this Order, the Department of Justice shall promptly seek to obtain security clearances for them at the request of defense counsel.

19. *See* Def.'s Response to United States' Motion for a Protective Order at 2 (stating satisfaction with this provision).

In short, in this case the need to protect sensitive information clearly outweighs defendant's need to know all of that information personally when his knowledge of it will not contribute to his effective defense. Under such circumstances, limiting disclosure to defendant's counsel is warranted under Rule 16 and Section 3 of CIPA, and it does not violate defendant's constitutional rights.[20]

**20.** *See, e.g., United States v. Herrero,* 893 F.2d 1512, 1524–27 (7th Cir.) (ruling that protective order preventing defense counsel from disclosing privileged information to defendant did not violate right to effective assistance of counsel or due process right), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990).

*See also United States v. Singh,* 922 F.2d 1169, 1172–73 (5th Cir.) (ruling that removing defendants from courtroom for a hearing on the materiality of an informant's testimony did not violate Confrontation Clause, where, *inter alia,* defense counsel was permitted to stay in the courtroom and the testimony was deemed not material), *cert. denied,* 500 U.S. 938, 111 S.Ct. 2066, 114 L.Ed.2d 471 (1991); *United States v. Eniola,* 893 F.2d 383, 385–88 (D.C.Cir.1990) (ruling that protective order limiting disclosure to defense counsel did not violate Sixth Amendment right to effective assistance of counsel where counsel presented no case that the evidence could arguably be used to support a legitimate defense); *United States v. De Los Santos,* 819 F.2d 94 (5th Cir.) (per curiam) (holding that excluding defendant from a portion of a pre-trial motion hearing that discussed privileged information did not violate the Confrontation Clause, where privileged information would not have been helpful to his defense), *cert. denied,* 484 U.S. 978, 108 S.Ct. 490, 98 L.Ed.2d 488 (1987); *United States v. Miller,* 480 F.2d 1008, 1010 (5th Cir.) (per curiam) (ruling that excluding defendant from testimony of an adverse witness in a pre-trial hearing did not violate defendant's confrontation right, where defendant's counsel was present and could cross-examine the witness), *cert. denied,* 414 U.S. 1041, 94 S.Ct. 543, 38 L.Ed.2d 332 (1973); *United States v. Bell,* 464 F.2d 667, 669–72 (2d Cir.) (ruling that excluding defendant from testimony of adverse witness in a pre-trial suppression hearing did not violate the Confrontation Clause, where defendant's counsel was present and could cross-examine the witness and where the witness's testimony was unrelated to defendant's guilt or innocence), *cert. denied,* 409 U.S. 991, 93 S.Ct. 335, 34 L.Ed.2d 258 (1972).

**21.** Section 4 of CIPA provides as follows:

The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to

### C.

### UNITED STATES' MOTION FOR LEAVE TO FILE AN *EX PARTE, IN CAMERA* SUBMISSION UNDER SEAL

■ Finally, the court shall grant in part and deny in part the United States' motion under Section 4 of CIPA[21] and Rules 16(d) and 26.2(c) of the Federal Rules of Criminal Procedure[22] for leave to file statements *ex*

substitute a statement admitting relevant facts that the classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

**22.** Rule 16(d)(1) provides as follows:

Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate. Upon motion by a party, the court may permit the party to make such showing, in whole or in part, in the form of a written statement to be inspected by the judge alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the party's statement shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

The First and Ninth Circuits have stated that Section 4 of CIPA is intended to clarify courts' authority under Rule 16(d) to deny or restrict discovery in the interests of national security. *See, e.g., U.S. v. Sarkissian,* 841 F.2d 959, 965 (9th Cir.1988); *United States v. Pringle,* 751 F.2d 419, 427 (1st Cir.1984), *vacated and remanded on other grounds sub nom. United States v. McAfee,* 479 U.S. 805, 107 S.Ct. 49, 93 L.Ed.2d 10 (1986).

Rule 26.2(c) provides as follows:

If the other party claims that [a witness] statement contains privileged information or matter that does not relate to the subject matter concerning which the witness has testified, the court shall order that it be delivered to the court in camera. Upon inspection, the court shall excise the portions of the statement that are privileged or that do not relate to the subject matter concerning which the witness has testified, and shall order that the statement, with such material excised, be delivered to the moving party. Any portion of the statement that is withheld from the defendant over the defendant's objection must be preserved by the attorney for the government, and, if the defendant appeals a conviction, must be made

*parte, in camera,* and under seal as support for a subsequent motion to deny or limit discovery of classified materials. The government may file statements *in camera* and under seal; the government may not, however, file those statements *ex parte.* Defense counsel is entitled to inspect the government's submissions. Defendant himself may not review the submissions unless defense counsel demonstrates that particular evidence must be disclosed to him as well. Upon reviewing the government's submissions, defense counsel may file, *in camera* and under seal, papers arguing that the government's submissions do not establish a facial claim of privilege, or that they contain evidence material to the defense and thus must be disclosed even if classified.

Under Section 4 of CIPA, classified information may only be discovered if the defendant first shows that the requested material is relevant to his defense. *See Yunis III,* 924 F.2d at 1095. If defendant meets this test, the court's next task is deciding whether the government has made a facially valid claim that the information is classified. *See id.* at 1095. The government may make its case for privilege "in the form of a written statement to be inspected by the court alone,"[23] but *ex parte* filings are not required[24] nor even favored.[25]

At issue here are the Rule 16 materials that defendant sought in his motion to compel and that were found relevant in Section II(A) of this memorandum opinion, as well as all relevant prior statements of government witnesses who are expected to testify at a pre-trial hearing on defendant's motions to dismiss. The government seeks to file statements *ex parte, in camera* and under seal in support of its upcoming motion to deny or limit discovery of this information. According to the government, some of this information is not truly material to the defense and contains classified information which could not be disclosed to defendant without damaging national security.[26]

Defendant does not contest the filing of the United States' supporting statement *in camera* and under seal, and to this extent the United States' motion shall be granted. The government is right that a public hearing about the sensitivity of classified information would render moot any decision on whether it should remain undisclosed. The government also rightly argues that Mr. Rezaq himself should generally be barred from reviewing the supporting statements. As discussed above, Mr. Rezaq is an accused terrorist who never knew the sensitive information here at issue and never had a security clearance and is unlikely to get one.[27] With the very limited provision for warranted disclosures to defendant described below, the defense does not object to barring defendant from reviewing the government's CIPA statements.

available to the appellate court for the purpose of determining the correctness of the decision to excise the portion of the statement.

**23.** Section 4 of CIPA. *See also Sarkissian,* 841 F.2d at 965 (rejecting argument that under Section 4 of CIPA, government must file a public claim of privilege); *Pringle,* 751 F.2d at 425–28 (affirming district court's use of *ex parte, in camera* procedures to inspect government's submissions under Section 4 of CIPA and Rule 16(d)(1)).

**24.** *See* Notes of Advisory Committee on Rules following Rule 16 of the Federal Rules of Criminal Procedure, concerning 1974 Amendment; Notes of Committee on the Judiciary, House Report No. 94–247 (emphasis added):

Proposed [Rule 16(d)(1)] *required* the court to conduct an ex parte proceeding whenever a party so requested. The Committee changed the mandatory language to permissive lan-

guage. A court *may, not must,* conduct an ex parte proceeding if a party so requests.

**25.** *See George,* 786 F.Supp. at 16. *See also* Notes of Advisory Committee on Rules following Rule 16 of the Federal Rules of Criminal Procedure, concerning 1974 Amendment; Notes of Committee on the Judiciary, House Report No. 94–247 (noting that even under Rule 16(d)(1), "ex parte proceedings are disfavored and not to be encouraged.").

**26.** United States' Memo. in Support of Motion for Leave to File Submissions *Ex Parte, In Camera* and Under Seal at 1.

**27.** In this respect, this case resembles *Pringle,* in which the First Circuit affirmed a district court's use of *ex parte, in camera* proceedings under Section 4 of CIPA where defendants had never possessed the classified information that they sought to have disclosed. *See Pringle,* 751 F.2d at 427.

The government asks too much, however, when it expects this court to exclude defendant's *counsel* from reviewing the CIPA statements. Defense counsel have received security clearances, and there is every reason to think that Mr. Rezaq's counsel can be trusted with this sensitive information. In light of this, the very strong presumption against *ex parte* proceedings, even when statutorily permitted, urges that defense counsel be allowed to review the CIPA material. *See, e.g., George,* 786 F.Supp. at 16 ("*Ex parte* proceedings are generally disfavored, even when the federal rules expressly permit them."). *Ex parte* proceedings here would force this court into the very awkward position of making defendant's case and then deciding his claim. *See, e.g., Dennis v. United States,* 384 U.S. 855, 875, 86 S.Ct. 1840, 1852, 16 L.Ed.2d 973 (1966) ("In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate."); *United States v. Napue,* 834 F.2d 1311, 1319 (7th Cir.1987) (*ex parte* communications create appearance of impropriety and risk of real impropriety). Requiring the court to do defense's job as well as its own not only raises the appearance of impropriety, it taxes scarce judicial resources as well. *See, e.g., United States v. Solomon,* 422 F.2d 1110, 1119 (7th Cir.) (*ex parte* proceedings "place[ ] a substantial burden upon the trial judge to perform what is naturally and properly the function of an advocate."), *cert. denied sub nom. Sommer v. United States,* 399 U.S. 911, 90 S.Ct. 2201, 26 L.Ed.2d 565 (1970). Here, as in *George,* "[t]his court will benefit from the arguments of counsel on both sides concerning these discovery issues." *George,* 786 F.Supp. at 17.

The government also goes too far in requesting a categorical bar against Mr. Rezaq's review of the CIPA material. Generally, of course, Mr. Rezaq shall not be allowed to see the CIPA statements. However, this court shall retain the power to permit defendant to view portions of the CIPA statements if his counsel—following the procedures set forth in paragraph 10(f) of the protective order—convince this court that it is necessary.

Once defense counsel review the CIPA materials filed under seal and *in camera,* they may file a response in opposition. Such opposition may show that the government has failed to make at least a colorable claim of privilege,[28] or that the evidence should be disclosed even if properly classified because it is material to the defense.[29]

### D.

### GOVERNMENT'S MOTION FOR A PRE-TRIAL CIPA CONFERENCE

Lastly, the government has moved for a pre-trial conference pursuant to Section 2 of CIPA to consider matters relating to classified information that may arise in this case.[30] Because defendant has no objection[31] and because a pre-trial conference may help this court establish additional procedures for dealing with any classified information in this

**28.** *See Yunis II,* 867 F.2d at 623 (stating that after defendant proves that the information is relevant to the defense, the government has the burden of making a facially valid claim of privilege).

**29.** *See id.* at 623–24. The *Yunis II* court stated that once the government has made a facially valid claim of privilege, defendant is entitled only to evidence that is material to his defense. The court defined "material" as evidence that is "helpful or beneficial" to the defense. *Id.* at 625.

**30.** Section 2 of CIPA provides as follows:
At any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution. Following such motion, or on its own motion, the court shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by section 5 of this Act, and the initiation of the procedure established by section 6 of this Act. In addition, at the pretrial conference the court may consider any matters which relate to classified information or which may promote a fair and expeditious trial. No admission made by the defendant or by any attorney for the defendant at such a conference may be used against the defendant unless the admission is in writing and is signed by the defendant and by the attorney for the defendant.

**31.** *See* Def.'s Response to United States' Motion for a Pre–Trial Conference at 1 (stating no objection).

case, the motion for a pre-trial CIPA hearing shall be granted. The order accompanying this memorandum opinion shall set a time and date for the hearing.

## III.

### OTHER DISCOVERY MOTIONS

#### A.

### UNITED STATES' MOTION TO RETURN UNREDACTED INFORMATION

■ During discovery in this case, the prosecution mistakenly handed over to defense an unredacted copy of an Egyptair Flight 648 passenger list which contained passengers' dates of birth and passport numbers. (The United States had already given the defense a redacted passenger and crew list that had the dates of birth and passport numbers blocked out.) The government has moved to compel defendant to return the unredacted passenger list and all copies of it to the government.

The United States' argument that defendant is not entitled to the passengers' passport and birthdate information is probably correct but not helpful. Defendant is probably not entitled to the information. He never requested it, and any request he could have made would likely have been rejected for the same reasons that this court rejects his request for passenger names, addresses and telephone numbers. (*See supra* at Section II(A)(2), Request No. 1 of Defendant's Motion to Compel.) Yet defendant must show entitlement to the information only to enlist this court's aid in getting the information from the United States. Here, defendant got the information without this court's aid. Defendant does not need to show entitlement to collect information through his own private investigation, and he does not need to do so here.

The United States' complaint that defendant is holding United States "property"[32] can be satisfied by ordering defendant to return the original unredacted list to the government. This shall be ordered. But copies of the unredacted list are certainly not the government's "property" and need not be handed over to the government.

The policy in this Circuit is to treat information only as carefully as the guarding party does. *See In re Sealed Case,* 877 F.2d 976, 980 (D.C.Cir.1989) (even inadvertent disclosures waive claims of privilege). This court recognizes that the information is sensitive, that it is being disclosed to an accused terrorist and his counsel, and that the United States made the disclosing error while promptly delivering newly received translations of voluminous Maltese documents during informal and voluntary discovery. Yet "[n]ormally the amount of care taken to ensure confidentiality reflects the importance of that confidentiality" to the party seeking to keep the information secret. *Id.* at 980.

Accordingly, the defense may keep all copies of the unredacted passenger list. Copies of the unredacted passenger list may be viewed by defendant's counsel only, and defense counsel may not disclose any copies of the unredacted passenger list to the defendant Mr. Rezaq without the court's leave. Defense counsel may use copies of the unredacted passenger list solely in connection with the defense of this case and not for any other use.

#### B.

### UNITED STATES' MOTION FOR FINGERPRINTING

The United States has moved for an order directing defendant to submit to having exemplars taken of his fingerprints for identification purposes. The FBI has not taken his fingerprints since his arrival in the United States, and the government argues that it needs the exemplars to show that a fingerprint on the inside of a cockpit window on the plane of Egyptair Flight 648 matches his. Defendant objects on Fourth Amendment grounds. His arrest was illegal, defendant argues, and this court should deny the motion because no evidence seized from him as a result of an illegal arrest may be introduced.

---

**32.** United States' Reply in Support of Its Motion for Return of Documents at 2.

The motion shall be granted. The court has not yet decided whether defendant's arrest violated the Fourth Amendment. If it was indeed illegal, his fingerprint evidence will likely be suppressed, as defendant notes. In the meantime, however, the fingerprints may be taken.

## C.

### MOTIONS TO QUASH

Defendant has issued subpoenas *duces tecum* to Robert J. McCannell, Office of the Executive Director, L/EX, Department of State; to Joe Reap, a current employee of the Department of State; and to former United States Ambassador to Malta Gary Matthews. The subpoenas request the same sort of documents that defendant sought in Request No. 10 of his motion to compel, namely documents that could evidence his hypothesized agreement not to prosecute.

Defendant's opposition to the motions to quash is no more persuasive than his arguments in favor of Request No. 10 of his motion to compel. Here, as there, defendant must demonstrate that the requested discovery is relevant to a defense. *See United States v. Nixon*, 418 U.S. 683, 700, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039 (1974) (requiring showing of relevancy, admissibility, and specificity under Rule 17(c) of the Federal Rules of Criminal Procedure). Because defendant has made no showing that his subpoena demands are relevant to a viable defense, this court shall quash these subpoenas *duces tecum.*

(There is only one subpoena demand that defendant claims is not designed to support the agreement-not-to-prosecute defense. His subpoena request to Mr. McCannell for "any records, memoranda, papers, or documents relating to [defendant] which the United States possesses" is aimed at developing evidence to support his double jeopardy defense, defendant argues.[33] Defendant concedes that it is "inartfully written";[34] in fact, it is far too broad and non-specific to let stand under *Nixon.* It shall be quashed along with the rest of the subpoenas *duces tecum.*)

Defendant has also issued subpoenas for the testimony of Reap and Matthews. If defendant wishes their testimony, he must comply with 22 C.F.R. §§ 172.1 *et seq.* (1993), which require him to produce a written statement establishing the nature and relevance of the official information he seeks with as much specificity as possible. The regulations forbid a subpoenaed employee or former employee from testifying or producing records until defendant provides such a written statement and the witnesses have received authorization from designated officials in the Department of State. Because defendant has produced no such written statement, the subpoenas for testimony shall also be quashed.

## IV.

### CONCLUSION

A separate order summarizing all of the above shall issue this date.

---

**33.** Def.'s Opp'n to United States' Motions to Quash Subpoenas at 4.

