Kenneth **FULLER**, Petitioner–Appellee,

v.

John **GORCZYK**, Commissioner Vermont Department of Corrections, Respondent–Appellant.

Docket No. 00–2430.

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 2000.

Decided Nov. 27, 2001.

**214**

Robert Appel, Office of the Defender–General (Henry Hinton, on the brief), Montpelier, VT, for Petitioner–Appellee.

Peter R. Neary, Deputy State's Attorney, Rutland, VT, for Respondent–Appellant.

Before: WALKER, Chief Judge, OAKES and LEVAL, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Appellant John Gorczyk, Commissioner of the Vermont Department of Corrections, appeals from a June 22, 2000 judgment of the United States District Court for the District of Vermont (J. Garvan Murtha, *Chief Judge*) granting habeas corpus to appellee Kenneth Fuller on the basis that Fuller's Confrontation Clause rights were violated when the Vermont trial court precluded him from introducing certain evidence and testimony during his trial for sexual assault. Because we agree with appellant that the Vermont Supreme Court did not unreasonably apply clearly established Supreme Court law, we reverse the grant of habeas and dismiss the petition.

### BACKGROUND

On February 23, 1995, appellee Kenneth Fuller was convicted, following a jury trial, of aggravated sexual assault of his stepson in violation of 13 Vt. Stat. Ann. tit. 13, § 3253(a)(9). Fuller was sentenced to an

indeterminate prison term of twenty to forty years, which he is now serving. *See State v. Fuller,* 168 Vt. 396, 721 A.2d 475 (1998). At the time of the sexual assault, appellee was married to Donna Fuller, who had a son, S.E., from a previous relationship. At trial, S.E. testified that one evening, while Ms. Fuller was still at work and he was home alone with Fuller, Fuller forced S.E. to drink beer and later followed him into his bedroom. S.E. testified that while the two were talking "man-to-man" about sex, Fuller pulled down his own pants and began to masturbate. When S.E. attempted to leave the room, Fuller grabbed him, pulled down S.E.'s pants, and placed his mouth on S.E.'s penis for several seconds. When S.E. fled into another room, Fuller followed him, threw him onto a couch, and again placed his mouth on the boy's penis. *See id.* at 478. S.E. later reported the incident to his mother, who relayed the allegations to her sister. Ms. Fuller's sister reported the allegations to the Vermont Department of Social and Rehabilitation Services ("SRS").

On several occasions before charges were filed, both Ms. Fuller and S.E. denied that the incident had taken place. The following inconsistencies in their stories came out at trial. When confronted initially by the SRS, both S.E. and Donna Fuller denied that S.E. had been sexually assaulted. *See id.* When police investigators tried to interview S.E. at his school, he initially denied that any sexual abuse had occurred. In a police interview at around the same time, Ms. Fuller denied both that Fuller had sexually abused S.E. and that she had told her sister about the incident. Several months later, however, when Fuller was arrested after a domestic dispute with Ms. Fuller, she and S.E. reported the incident to the police. While Fuller was in pretrial detention, Ms. Fuller

spoke with Fuller's defense counsel and again denied that the abuse had occurred.

At trial, S.E. testified about the incident and was unequivocal in his accusation. Ms. Fuller testified that Fuller confessed to her that he had indeed performed the acts S.E. had alleged. On direct examination, she testified as follows:

A. I confronted him with what I knew.

Q. What was his reaction? What did he say to you?

A. He denied it for a couple of minutes and then he admitted it was true and he was relieved that everybody knew and he wanted forgiveness from [S.E.] and I.

Later, when being examined about her inconsistent statements to the police, Ms. Fuller again stated that Fuller had confessed to her:

Q. And did you tell the police as well, in that statement that you confronted Ken and that he admitted it?

A. Yes.

Q. And that he had said he was sorry?

A. Yes.

Q. And that the reason he did it was so [S.E.] wouldn't be scared some day if a girl did it to him?

A. Yes.

Q. And that he promised that he'd never do it again?

A. Yes.

Fuller testified at trial that he was innocent and relied in part on the inconsistencies noted above. He asserted that S.E. and Ms. Fuller had concocted the charges against him as a result of the domestic dispute, and that S.E. resented Fuller's "intrusion into S.E.'s relationship with his mother." *Fuller,* 721 A.2d at 478. In support of his defense theory, Fuller sought to introduce, and cross Ms. Fuller on, two sets of out-of-court statements by

Ms. Fuller to impeach both her and S.E.'s credibility. The trial court rejected the proffer, and Fuller contends in this habeas appeal, as he did on direct appeal, that this exclusion violated his rights under the Confrontation Clause of the Sixth Amendment. This evidence included (1) statements Ms. Fuller had made in letters she sent to Fuller while he was in pretrial detention for the domestic assault charge, in which she made reference to her "lying"; and (2) statements she had made to a third party, Ken Harris, whom she had dated while Fuller was in detention, suggesting that she did not believe the incident had taken place.

Ms. Fuller wrote the following in her letters:

> Now with this court thing I'm really scared. I don't know how I'm going to get through the next days or weeks, I am intimidated by [the prosecutor] to the extent when I think about it my ears start ringing and I feel like I'm having a panic attack, I can just imagine how you feel. It's your life on the line. I put you there and now I have to try to get you out, what a mess. I wish we could either turn back the clock or zoom it ahead and have this over.

*Id.* at 483 (alteration in original). The second statement was as follows:

> I don't know why I'm feeling sorry for myself. I guess it's because of this great big huge mess that's bigger than the world and I'm scared because I don't understand the law and I'm afraid of what [the prosecutor] and the judge will do to me for lying.

*Id.* (alteration in original).

The defendant offered the letters to impeach Ms. Fuller's credibility and to show that she had felt intimidated by the prosecutor. *See id.*

The Vermont trial court excluded the statements in the letters on the basis that their content was inadmissible hearsay. The court also reasoned that their potential prejudicial effect to the defendant outweighed their probative value, because if the letters were admitted, the prosecution would be permitted to introduce evidence regarding the defendant's aggravated domestic assault charge to explain how Ms. Fuller knew the prosecutor. Finally, the trial court found that the statements were superfluous because there was ample other evidence with which to impeach Ms. Fuller's credibility, including her prior inconsistent statements to the police.

During cross-examination of Ms. Fuller, Fuller's attorney received a note from a man, Ken Harris, stating, "Your client has not done anything to [S.E.]." Fuller therefore sought to have Ken Harris testify. Fuller's proffer with respect to this testimony was that Ms. Fuller confided to Harris that she did not believe the sexual assault had taken place. Fuller sought to introduce Harris's testimony for three purposes: (1) to impeach Ms. Fuller's credibility with respect to statements she made to the police, (2) to reopen the issue of the admissibility of her letters to the defendant, and (3) to impeach S.E.'s credibility indirectly, by demonstrating that Ms. Fuller did not believe that the sexual incident had taken place. The Vermont trial court determined Ken Harris's testimony to be inadmissible, finding it cumulative for the purpose of impeaching Ms. Fuller's credibility and irrelevant for the purpose of impeaching S.E.'s credibility. The court noted that Ms. Fuller had no personal knowledge of the incident—she could only testify as to what S.E. had reported and that she had reported it to the police. With respect to the statements' impact on S.E.'s credibility in particular, the court concluded that to admit testimony as to Ms. Fuller's "beliefs" about whether the

incident had taken place inappropriately invaded the province of the jury to determine that fact and to weigh credibility of witnesses, such as S.E. The court explained:

> Well, with respect to Mr. Harris' statement that Donna Fuller told him that she wasn't sure it happened, that's not admissible testimony from—even if it came from Donna Fuller. It's not admissible as to whether she believed it or did not believe [S.E.'s] allegations against the Defendant. And then to have it come in through another person, is number one, hearsay with no exceptions that I've been informed of and number two, inadmissible for the very reason that her opinion as to—or her beliefs are not relevant and it's invading the jury's province as to their ultimate decision as to whether or not these allegations are true or not.

> And in there you clearly said that the Defense wished to use these statements to impeach [S.E.'s] credibility by Donna Fuller's beliefs as to what happened, which is not admissible evidence either. . . .

### Vermont Supreme Court Proceedings

On direct appeal to the Vermont Supreme Court, Fuller contended that his Confrontation Clause rights had been violated when the trial court excluded the statements in Ms. Fuller's letters and Ken Harris's testimony. *See State v. Fuller,* 168 Vt. 396, 721 A.2d 475 (1998). The Vermont Supreme Court affirmed Fuller's conviction over a dissent.

With respect to Ms. Fuller's out-of-court statements to Ken Harris, the Vermont Supreme Court held that the trial court "did not err in ruling Mr. Harris's testimony inadmissible" for the purpose of impeaching Donna Fuller's credibility, because the testimony had little relevance to her truthfulness and other testimony had already fulfilled this function, including her own testimony that on earlier occasions she had denied the incident had taken place. *Id.* at 482. With respect to the two letters, the Vermont Supreme Court agreed with Fuller that the trial court "erred in finding the statements inadmissible" for the purpose of impeaching her credibility and found that their exclusion violated his rights under the Confrontation Clause. *Id.* at 483. Nonetheless, the Vermont Supreme Court held this error to be harmless under the standard set forth in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and applied to Confrontation Clause violations in *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Recognizing the limited probative value of these letters, coupled with Fuller's concession in his own testimony that he did not think Ms. Fuller invented the allegations against him—a concession in "direct opposition to defendant's theory of the case that Ms. Fuller had fabricated the sexual assault"—the Vermont Supreme Court found the error harmless beyond a reasonable doubt and thus affirmed Fuller's conviction. *Fuller,* 721 A.2d at 484 ("[I]t is clear beyond a reasonable doubt that defendant would have been found guilty even if the proffered evidence had been admitted.").

### District Court Proceedings

Fuller subsequently filed this petition for habeas corpus in the district court, again asserting that the exclusion of Ms. Fuller's out-of-court statements violated his Confrontation Clause rights. The district court agreed with the Vermont Supreme Court that Fuller's Confrontation Clause rights were violated with respect to the exclusion of Ms. Fuller's letters, because he was prohibited from engaging in otherwise permissible impeachment for

bias. The district court, however, disagreed with the Vermont Supreme Court's conclusion that the error was harmless under *Chapman* and *Van Arsdall.* Given the importance of Ms. Fuller's testimony, and the suggestion in one of the letters that she had "lied," the district court concluded that the trial court's exclusion of cross-examination on these statements "cannot be considered harmless error."

The district court noted that the trial court's refusal to allow Fuller to present Harris's testimony "reinforces this conclusion." The court reasoned that Harris's testimony could have affected how the jury assessed Ms. Fuller's testimony because it contradicted her trial testimony and was therefore relevant to her credibility. The district court granted a conditional writ of habeas corpus, requiring Fuller's release unless the State retried him within 90 days. Appellant John Gorczyk, Commissioner of the Vermont Department of Corrections, acting on behalf of the State of Vermont, appeals from the district court's judgment granting habeas corpus. The 90-day deadline has been stayed pending the resolution of this appeal.

## DISCUSSION

■ We review de novo a district court's judgment granting a writ of habeas corpus. *See Sacco v. Cooksey,* 214 F.3d 270, 273 (2d Cir.2000) (per curiam).

Appellant contends primarily that the Vermont Supreme Court did not "unreasonably apply" clearly established federal law on the Confrontation Clause under *Delaware v. Van Arsdall. See* 28 U.S.C. § 2254(d)(1). Appellant further contends that even if the Vermont court's judgment constituted an "unreasonable application" of federal law, the error did not result in "actual prejudice" and was thus harmless under *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353

(1993). Appellee Fuller responds that the Vermont court applied the *Chapman* standard unreasonably in finding any error harmless, because, had impeachment of Ms. Fuller through the letters and her statements to Harris been permitted, "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility." *Van Arsdall,* 475 U.S. at 680, 106 S.Ct. 1431. He reasons that "the defendant's own confession [to Ms. Fuller] is probably the most probative and damaging evidence that can be admitted against him," *Arizona v. Fulminante,* 499 U.S. 279, 296, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (White, J., concurring), and that a limitation on cross-examination on this point could not be harmless beyond a reasonable doubt in the circumstances. We agree with appellant that the Vermont Supreme Court did not unreasonably apply clearly established federal law and therefore reverse the grant of habeas corpus and dismiss the petition.

In 1996, Congress curtailed the federal courts' power to grant habeas corpus to state prisoners when it passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, 1219 (1996). In pertinent part, 28 U.S.C. § 2254(d)(1), as amended, reads:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States....

■ Under the "unreasonable application" clause, "a federal habeas court may

grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Because the Vermont Supreme Court properly identified the standard set forth in *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), as the appropriate governing legal principle, the "unreasonable application" clause is relevant here.

■ A federal court may not grant habeas simply because, in its independent judgment, the "relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411, 120 S.Ct. 1495. An "unreasonable application" must be "objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495. For an application to be "objectively unreasonable," "[s]ome increment of incorrectness beyond error is required. . . . [T]he increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted). While the district court properly noted that it could grant the writ only on a finding that the state court applied the appropriate legal principle "unreasonably," we agree with appellant that the district court simply disagreed with the Vermont Supreme Court's application and did not adequately identify why it found the decision affirming Fuller's conviction to be "objectively unreasonable."

## I. Clearly Established Law

Fuller contends that the Vermont Supreme Court "unreasonably applied" clearly established federal law on the Confrontation Clause in affirming his conviction.

He argues that the trial court improperly restricted his ability to cross-examine Ms. Fuller about the letters she sent to Fuller, and to call Harris to testify about Ms. Fuller's statements to him.

■ The Supreme Court has explained that

[t]he Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him . . . . [t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. Of particular relevance here, [w]e have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally-protected right of cross-examination.

*Delaware v. Van Arsdall,* 475 U.S. 673, 678–79, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (citations and internal quotation marks omitted) (last two alterations in original). The focus of Confrontation Clause analysis is an individual witness's testimony:

[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.

*Id.* at 680, 106 S.Ct. 1431 (internal quotation marks omitted) (alteration in original). The right to cross-examine is not absolute, however: "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment,

prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 679, 106 S.Ct. 1431.

■ Once a court determines that a defendant's Confrontation Clause rights have been violated, the court must then determine whether that error was harmless:

> The constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to *Chapman* harmless-error analysis. The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.

*Id.* at 684, 106 S.Ct. 1431 (citing *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); *see also Henry v. Speckard,* 22 F.3d 1209, 1215 (2d Cir.1994).

Thus, before deciding whether habeas corpus relief was properly granted, we must determine whether the Vermont Supreme Court unreasonably applied (1) *Van Arsdall* as to the right to confrontation, and (2) *Chapman* as to the harmlessness of any error in the exclusion of Donna Fuller's letters and Ken Harris's testimony.

We express no position on appellant's contention that on habeas, we must apply the harmless error standard set forth in *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), that an error is harmless which does not result in "actual prejudice", because we conclude that the result would be the same as under our analysis that the state court did not "unreasonably apply" the *Chapman* harmless error test on direct review. Several of our sister circuits have questioned the continuing validity of the *Brecht* test in light of AEDPA's command that we review state court decisions to determine only whether the state court "unreasonably applied" clearly established Supreme Court precedent under 28 U.S.C. § 2254(d)(1). *See Anderson v. Cowan,* 227 F.3d 893, 898 (7th Cir.2000) (questioning the continued viability of *Brecht* in light of amended § 2254, but finding it unnecessary to resolve the question because "[e]ven if we assume that *Brecht* articulates a more generous standard than AEDPA, we must conclude that, under that more generous standard, the error was harmless"); *Whitmore v. Kemna,* 213 F.3d 431, 433–34 (8th Cir.2000) (suggesting that after a state court has applied a *Chapman* harmless error analysis, the federal court on § 2254 review need not then apply *Brecht,* but rather, must ask only whether the state court's application of the *Chapman* error standard was "unreasonable"; but finding it unnecessary to resolve the issue because the result would be the same under either *Brecht* or § 2254). *But cf. Nevers v. Killinger,* 169 F.3d 352, 371 (6th Cir.1999) (holding that when the issue before the federal habeas court is the state court's finding of harmless error, the test set forth in *Brecht* "precisely captures Congress's intent as expressed in AEDPA and, therefore, continues to be applicable").

A recent decision of this court, *Lainfiesta v. Artuz,* 253 F.3d 151, 157–58 (2d Cir. 2001), applied the *Brecht* test to hold harmless a violation of the defendant's Sixth Amendment right to counsel of his choice. There, unlike in the present case, the state court did not apply the *Chapman* harmless error test on direct review, as it found no constitutional error. In addition, we noted that the Supreme Court had not yet established whether the right to counsel of one's choice is subject to harmless error analysis; thus, there was no federal law "clearly established by the Supreme

Court" for the state court to have unreasonably applied. Here, in contrast, the Vermont court applied the *Chapman* harmless error test, which the Supreme Court has "clearly established" applies to a violation of the Confrontation Clause. Thus, the continued vitality of *Brecht* in light of amended § 2254 remains open in this circuit. We need not decide the issue today, as even under the *Brecht* standard, we would find no "actual prejudice" to Fuller in the exclusion of the testimony in light of the ample inculpatory evidence, including Fuller's own statements that he did not think that Ms. Fuller had invented the charges against him.

### A. Donna Fuller's Letters

■ We agree with appellant that the Vermont Supreme Court did not "unreasonably apply" federal law when it held that the exclusion of Ms. Fuller's letters was harmless. Even assuming there had been a violation of the Confrontation Clause when the trial court excluded cross-examination of Donna Fuller about her letters, any error was harmless beyond a reasonable doubt. The Vermont court reasoned that the letters had limited independent probative value, given Ms. Fuller's explanation during a hearing that her fear of the prosecutor stemmed from a false, exculpatory statement she intended to make to the defense attorney's private investigator, and not to any inculpatory statements she had already made to the police. *Fuller*, 721 A.2d at 484. Second, the Vermont Supreme Court found compelling Fuller's concession on re-cross-examination that he did not think that Ms. Fuller invented the allegations against him. *See id.* at 484. Third, S.E.'s testimony about the events was unwavering at trial and independently inculpated Fuller. Finally, we agree with the Vermont Supreme Court's assessment that the defendant had the opportunity at trial to impeach Ms. Fuller's credibility with ample other evidence showing that she had made inconsistent statements about the sexual assault. Accordingly, the "damaging potential of the cross-examination" *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. 1431, was limited, and even if "fully realized," *id.*, would not affect the trial's outcome. Thus, we are unable to conclude that the Vermont Supreme Court unreasonably applied the *Chapman* harmless error standard in this case: We think it clear beyond a reasonable doubt that Fuller would have been found guilty even if cross-examination on the proffered letter evidence had been allowed. *See id.*

### B. Ken Harris's Testimony

The Vermont Supreme Court found that the exclusion of the Harris testimony did not violate Fuller's rights under the Confrontation Clause, and therefore did not reach the question of harmless error.[1] After carefully considering the entire record, we cannot find an unreasonable application of clearly established law.

The Vermont Supreme Court held:

Ms. Fuller's doubts as to whether the sexual assault occurred, offered through the testimony of a third person, is not the type of evidence normally admitted for impeachment purposes. Her alleged statement [to Harris] was not an assertion of an opinion on S.E.'s character for truthfulness. The statement offered through Mr. Harris is hearsay and only relevant if offered for the truth of the

---

1. Appellee Fuller's cursory reference to his right to call Harris as a witness was presented to the Vermont Supreme Court only as a state law question, rather than one under the Compulsory Process Clause of the Sixth Amendment. *See Fuller*, 721 A.2d at 484. Thus, we do not reach it.

matter asserted. Therefore, the court did not err in excluding the inadmissible impeachment evidence.

*Fuller,* 721 A.2d at 483 (citations omitted).

At oral argument on appeal, Fuller suggested an alternative theory of relevance not advanced in the trial court: The exclusion of Ken Harris's testimony violated the Confrontation Clause because Fuller could have offered it for the purpose of impeaching Ms. Fuller's statements regarding his confession to undermine confidence in whether the admission had taken place.

■ Fuller never advanced this theory of relevance before the trial court. In a brief colloquy concerning Ms. Fuller's statements to Harris, the prosecution briefly alluded to this theory:

> Now, I suppose, … in connection with her statement that Ken Fuller told her that admitted to it at the time and she gave that statement to the police, that Counsel could say, "Well, you wouldn't have said this if he had admitted it to you."

But even after the prosecutor mentioned this possible theory, defense counsel continued to rely on other theories of relevance that the trial court found invalid: to impeach Ms. Fuller's credibility regarding her statements to the police, and indirectly to impeach S.E.'s credibility by showing that Ms. Fuller did not believe S.E.

These were not valid reasons. Ms. Fuller had no personal knowledge whether Fuller did what he was accused of. She gave no directly inculpatory testimony that would be contradicted or impeached by her statement to Harris that she did not believe the sexual assault had taken place. As to all the reasons Fuller advanced to the trial judge in support of the receipt of the statement to Harris, the statement was of no probative or impeachment value as the Vermont Supreme Court held.

■ Because at trial Fuller's attorney supported the relevance of this evidence on several other grounds and not on the theory he now advances, we cannot find that the trial judge made an "unreasonable application" of the Confrontation Clause in failing to guess a theory of relevance that was not argued. *See Williams v. Taylor,* 529 U.S. 362, 409, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

Nor did the Vermont Supreme Court "unreasonably" apply the Confrontation Clause. The question before the Vermont Supreme Court was not whether the statement to Harris was a proper subject of cross-examination, but whether the trial judge violated the Confrontation Clause in declining to allow the cross. Because this theory of relevance was not argued to the trial judge, the Vermont Supreme Court's conclusion that there was no violation of the Confrontation Clause was likewise not an unreasonable application of the Constitution.

We have considered all remaining arguments and find them to be without merit.

## CONCLUSION

We reverse the judgment of the district court granting the writ of habeas corpus and dismiss the petition.