**UNITED STATES of America**

**v.**

**Adnan Ibrahim Harun A HAUSA, aka Spin Ghul, aka Esbin Gol, aka Isbungoul, aka Abu Tamim, aka Joseph Johnson, aka Mortala Mohamed Adam, Defendant.**

**12 Cr. 0134 (BMC)**

United States District Court, E.D. New York.

Signed 01/12/2017

---

**17.** See also Fed. R. App. P. 5 (providing rules governing petitions for permission to appeal).

David Stern, Rothman, Schneider, Soloway & Stern, P.C., Joshua L. Dratel, Law Offices of Joshua L. Dratel, P.C., New York, NY, Susan Gail Kellman, Susan G. Kellman, Brooklyn, NY, for Defendant.

Shreve Ariail, United States Attorneys Office, Matthew Jacobs, Melody Wells, United States Attorney's Office, Brooklyn, NY, for United States of America.

## MEMORANDUM DECISION & ORDER

COGAN, District Judge.

Before me is defendant's motion to declare the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. III, unconstitutional as applied in this case because it violates defendant's Fifth and Sixth Amendments rights and because the Government is using its declassification authority as a "sword" to deny defendant his rights to discovery under the Federal Rules of Criminal Procedure. Significantly, every court in the country, including the Second Circuit, that has addressed arguments that CIPA is unconstitutional, has rejected these challenges and upheld its constitutionality. See, e.g., In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93 (2d Cir. 2008); United States v. Anderson, 872 F.2d 1508 (11th Cir. 1989); United States v. Wilson, 750 F.2d ·7 (2d Cir. 1984); United States v. Wilson, 732 F.2d 404 (5th Cir. 1984); United States v. Wilson, 721 F.2d 967 (4th Cir. 1983); United States v. Al Fawwaz, No. S7

98–cr–1023, 2014 WL 6997604 (S.D.N.Y. Dec. 8, 2014); United States v. Hitselberger, 991 F.Supp.2d 91 (D.D.C. 2013); United States v. Lahiji, No. 3:10-506, 2013 WL 550492 (D. Or. Feb. 12, 2013) United States v. Drake, 818 F.Supp.2d 909 (D. Md. 2011); United States v. Hashmi, 621 F.Supp.2d 76 (S.D.N.Y. 2008); United States v. Rosen, 518 F.Supp.2d 798 (E.D. Va. 2007); United States v. Lee, 90 F.Supp.2d 1324 (D.N.M. 2000); United States v. Ivy, No. 91-00602-04, 1993 WL 316215 (E.D. Pa. Aug. 12, 1993); United States v. Yunis, 924 F.2d 1086 (D.C.Cir. 1991); United States v. Poindexter, 725 F.Supp. 13 (D.D.C. 1989); United States v. Jolliff, 548 F.Supp. 229 (D. Md. 1981).

Similarly, I find defendant's arguments to be without merit and thus deny defendant's motion.

## I. The Propriety of the Government's Declassification Authority

■ The defense accuses the Government of tactically using its "unfettered discretion" to selectively declassify certain intercepted communications of defendant that it intends to introduce into evidence, while avoiding declassifying other communications that contain "invaluable exculpatory information that is material to his defense." The defense argues that this "cherry-picking" of incriminating communications to declassify deprives him of discovery that he is entitled to under the Federal Rules of Criminal Procedure and mandates finding that the application of CIPA in this case is unconstitutional. This argument is not grounded in the facts of this case or the applicable law.

First, this argument is completely meritless in light of the Government's explicit statements in its opposition brief that it "does not seek to rely on these [intercepted] communications at trial." The Government is not tactically cherry-picking state-

ments to gain an advantage; it has decided to forgo using all of the intercepted communications, and thus it will not declassify any particular statement. This means that defendant's accusation that the Government is using its classification authority as a sword to benefit itself while simultaneously hindering defendant is invalid.

Second, defendant's assertion that the Government's classification authority has deprived him of "invaluable exculpatory information that is material to his defense" is unsubstantiated. The Second Circuit has held that pursuant to the discretion that CIPA confers upon a district court, the court may enter an order permitting the government to "withhold altogether 'classified information that might have been otherwise discoverable,' as long as this information is neither 'helpful [n]or material to the defense.'" In re Terrorist Bombings, 552 F.3d at 122 (quoting United States v. Aref, 533 F.3d 72, 76, 80 (2d Cir. 2008) (internal citation omitted). Following this authority, I had previously reviewed the classified source material *in camera* and met with defense counsel *ex parte* to listen to a presentation about anticipated defenses. After this presentation, I ordered that, in complying with its disclosure obligations, the Government may produce to the defense substituted classified summaries for a large amount of classified source material. See March 26, 2016 Memorandum Decision & Order. In that Order, I made explicit findings that the Government had properly invoked the state secrets privilege; that the summaries retain whatever potential exculpatory or impeachment value that the underlying source material possesses; that any information withheld from the summaries is not helpful to the defense; and that providing the summaries to cleared defense counsel satisfies the Government's disclosure obligations. Id.

Now, after reviewing the classified summaries, defendant claims that the Government has placed "critical voluminous evidence off-limits." The defendant, however, cannot articulate a single, even hypothetical, reason why the classified source material is helpful, let alone material or exculpatory. The defense also fails to give any explanation as to why the substituted summaries, which I previously found as even easier to read and comprehend than the underlying source material, are not adequate for the purposes of presenting a defense. Defendant's conclusory statement that he is deprived of invaluable exculpatory evidence is insufficient to find a discovery error, much less an constitutional error. See In re Terrorist Bombings, 552 F.3d at 126 ("[P]roduction of materials to a party's attorney alone falls within the common meaning of 'discovery.'"); see also United States v. Abu Ali, 528 F.3d 210, 248 (4th Cir. 2008) ("To overcome the governmental privilege, the defendant must come forward with something more than speculation as to the usefulness of such disclosure.")

Despite defendant's claim that the application of CIPA is unique in this case because defendant is being denied access to his own statements, this fact does not alter my analysis. Federal Rule of Criminal Procedure 16(a)(1)(A) and (B) provide that the Government, upon a defendant's request, must disclose certain of defendant's oral, written, and recorded statements, but this right is not absolute. A court may "for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). Concern for national security undoubtedly qualifies as good cause. Cf. Haig v. Agee, 453 U.S. 280, 307, 101 S.Ct. 2766, 2782, 69 L.Ed.2d 640 (1981) ("[N]o governmental interest is more compelling than the security of the Nation.").

Indeed, in United States v. Yunis, the District of Columbia Circuit held that the defendant's Fifth and Sixth Amendment rights were not violated by the withholding, from both defense counsel and the defendant, of audio recordings of conversations between the defendant and an FBI informant pursuant to CIPA because the disclosure of these recordings would harm national security. 924 F.2d at 1094–95; see also Al Fawwaz, 2014 WL 6997604, at *2–3 (permitting the Government to withhold classified intercepted communications from the defendant and rejecting defendant's assertion that he needed to access the communications so that he could assist defense counsel's understanding of them). Similarly, in United States v. El–Mezain, 664 F.3d 467, 522–23 (5th Cir. 2011), the Fifth Circuit rejected defendants' argument that the district court erred by refusing to compel the Government to grant the defendants access to their own intercepted statements, finding that it was sufficient that defendants had access to a substantial amount of other discovery and that cleared defense counsel had access to the classified communications.

In fact, the El–Mezain Court further found that even though the Government chose to declassify some of the intercepted communications, this did not require the Government to make all of the defendants' communications available to the defense or that the Government could no longer claim the state secrets privilege. Id. at 523. The Court refused to second-guess the Government's determination of what information was properly considered classified, explaining that "the fact that the Government determines that declassification of some of the communications will not harm national security does not ipso facto mean that declassification of all communications would have the same effect." Id. at 523. Thus, even in a case where the Government did what the defense erroneously

accuses it of doing in this case—choosing to declassify certain intercepted communications while leaving others classified—the court still found that the withholding of the defendant's own communications was justified.

Third, I reject defendant's argument that the Government is improperly invoking the state secrets privilege because the disclosure of defendant's own communications cannot compromise national security. It is widely accepted that the Government has a compelling interest in protecting not only the content of classified materials, but also the sources, methods, and liaison relationships used to obtain them. See El-Mezain, 664 F.3d at 522 ("[T]he Government may have an interest in protecting the source and means of surveillance that goes beyond protection of the actual contents of an intercepted conversation."); U.S. v. Yunis, 867 F.2d 617, 623 (D.C.Cir. 1989) ("Things that did not make much sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence gathering capabilities from what these documents revealed about sources and methods."); Al Fawwaz, 2014 WL 6997604, at *2 (rejecting defense counsel's argument that granting the defendant access to his own statements would not compromise national security because disclosure of the source of the information "may cause foreign governments to cease sharing intelligence with the United States or assisting in American law enforcement operations."); see also C.I.A. v. Sims, 471 U.S. 159, 175, 105 S.Ct. 1881, 1891, 85 L.Ed.2d 173 (1985) ("The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service.") (internal quotation marks and citation omitted).

Here, the Government has asserted that it would be detrimental to national security to reveal to defendant or even cleared defense counsel the way in which these communications were obtained to. After having reviewed the materials *in camera,* I refuse to second-guess the Government's determination. See United States v. Aref, No. 04-CR-402, 2007 WL 603510, at *1 (N.D.N.Y. Feb. 22, 2007) ("[B]ecom[ing] the arbiter of this Country's national security ... clearly is not the Court's function in a CIPA case."), aff'd, 533 F.3d 72 (2d Cir. 2008); United States v. Zazi, No. 10-CR-60, 2011 WL 2532903, at *2 n. 3 (E.D.N.Y. June 24, 2011) ("[C]lassification is an executive decision, one that courts are ill-suited to second-guess."). In fact, as to least some of the material, it is easy enough to see why the Government is protecting certain sources and methodologies.

Defendant's argument that these concerns are inapplicable here because prior public disclosures by Edward Snowden regarding the methodology and technology of the United States to intercept communications have already revealed the Government's capabilities to intercept communications is baseless. First, the defense is simply guessing that this is the method by which the communications were obtained and even acknowledging whether this assumption is correct would reveal classified information. Second, even if the subject communications were obtained by the methods described by Edward Snowden, he was not legally authorized to declassify such information, and his unsubstantiated disclosure cannot function as *de facto* declassification. See Wilson v. McConnell, 501 F.Supp.2d 545, 554 (S.D.N.Y. 2007); see also Executive Order No. 13526, 75 Fed. Reg. 707 (2009) (Under Section 1.1(c), "[c]lassified information shall not be declassified automatically as a result of any

unauthorized disclosure of identical or similar information.").

Therefore, I find that the Government is not improperly using its classification authority to deny defendant access to critical exculpatory evidence and that there is no basis to disclose the underlying source materials to the defense.

## II. Defendant's Fifth and Sixth Amendment Rights

Defendant argues that the application of CIPA in this case is unconstitutional because the Protective Order entered by this Court, which limits the dissemination of classified information to those persons having the requisite security clearance and therefore prevents defendant from personally reviewing the classified information, violates his Fifth and Sixth Amendment rights in various ways. Specifically, defendant argues that since he is not permitted to view his own classified communications, the Protective Order violates: (1) his Fifth Amendment right to testify in his own behalf; (2) his Fifth Amendment right to present a defense; (3) his Sixth Amendment right to assistance of counsel; (4) his Sixth Amendment right to confront the evidence and witnesses against him; (5) his Sixth Amendment right to be present at critical proceedings in his case; and (6) his Sixth Amendment right to assist in the preparation and presentation of his defense.

The Protective Order in this case is not unique. CIPA Section 3 "imposes upon district courts a mandatory duty to guard against the unauthorized disclosure of any classified material disclosed by the United States to any defendant in a criminal case." In re Terrorist Bombings, 552 F.3d at 121 (internal quotation marks and citation omitted); 18 U.S.C. app. III, § 3 ("Upon motion of the United States, the court shall issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case.") (emphasis added). Indeed, defendant acknowledges that the Second Circuit has both rejected many of the arguments he makes here and held that a defendant's Fifth and Sixth Amendment rights were not violated by a CIPA Protective Order that prohibited the defendant from personally reviewing the classified discovery. See In re Terrorist Bombings, 552 F.3d 93. Nonetheless, defendant argues that this case is different because he is being denied access to his own statements and communications. Defendant, however, fails to articulate any reason why being prohibited from reviewing his own statements, as opposed to other classified evidence, places him at a greater disadvantage. I find this distinction inconsequential and hold that the application of CIPA in this case does not violate defendant's Fifth or Sixth Amendment rights.

### A. Defendant's Fifth Amendment Rights Are Not Violated

 First, defendant claims that the application of CIPA violates his Fifth Amendment right to testify in his behalf because defense counsel cannot adequately prepare him to testify without addressing his classified statements and communications. The right to testify and present relevant testimony, however, is not without limitation. "The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal process.'" Rock v. Arkansas, 483 U.S. 44, 55, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987) (quoting Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)), provided that the restrictions are not "arbitrary or disproportionate to the purposes they are designed to serve." Id. at 55–56, 107 S.Ct. at 2711.

The restriction in this case is necessary to protect interests of national security, while still enabling defense counsel to adequately prepare defendant with the unclassified discovery, which also includes statements by defendant. Defendant fails to articulate any reason why this restriction is detrimental to counsel's ability to prepare him for direct or cross-examination. The classified statements are inculpatory and would not bolster defendant's testimony. Although the Government has stated that it will not seek to enter the statements into evidence, it has not indicated whether it will use the statements to impeach defendant if he takes the stand. However, I do not find that the classified statements would materially alter defendant's decision to testify. There are equally inculpatory unclassified statements of defendant that defense counsel may discuss with defendant and use to adequately advise him on whether he should testify and to prepare him for cross-examination if he does choose to testify. Therefore, defendant's right to testify is not violated by the restriction in this case. See United States v. Bin Laden, No. 98 CR 1023, 2001 WL 66393, at *8 (S.D.N.Y. Jan. 25, 2001) (rejecting defendant's claim that his attorneys will be unable to adequately prepare him to testify without addressing the classified materials and holding that the application of CIPA does not violate defendant's Fifth Amendment right to testify), aff'd, 552 F.3d 93 (2d Cir. 2008).

■ Second, defendant claims that the application of CIPA impermissibly infringes upon his due process right to present a defense. Specifically, defendant argues that the Government's "selective declassification" denies defendant of his "constitutionally guaranteed access to evidence," which the Supreme Court has developed to safeguard the right to present a defense, California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984), because defendant is personally being denied access to relevant and exculpatory evidence that likely only he can explain and interpret for counsel. Thus, defendant argues, because counsel cannot discuss the classified materials with him, exculpatory evidence will inevitably not be identified or exploited.

The Second Circuit rejected this exact argument in In re Terrorist Bombings, finding that the defendant's right to present a defense was not violated by the protective order in that case because defense counsel had access to all classified material even arguably relevant to the defense and, even though defendant could not personally review the classified information, his counsel was able to share the relevant facts with defendant. Similarly, here, the Government took a generous approach when deciding whether the classified materials were exculpatory or impeaching and has provided all such materials, or adequate summaries of such materials, to defense counsel. Defense counsel may use the classified materials to ask defendant general questions about the underlying facts as long as they do not reveal the contents of the classified information.

Putting aside the fact that defendant has refused to assist counsel in any aspect of his defense, defendant has not articulated any non-speculative reason of how he would be able to help counsel understand the materials or identify exculpatory evidence even if he chose to assist counsel. See Al Fawwaz, 2014 WL 6997604, at 2 ("The suggestions that [the defendant] might assist with the process of identifying relevant evidence does not demonstrate that the Protective Order deprives the defense of evidence that would be useful to counter the government's case or to bolster a defense.") (emphasis in original);

United States v. Rezaq, 156 F.R.D. 514, 525 (D.D.C. 1994) (holding that the protective order limiting disclosure of classified information to defense counsel did not violate defendant's constitutional rights because "the need to protect sensitive information clearly outweighs defendant's need to know all of that information personally when his knowledge of it will not contribute to his effective defense.").

Finally, defendant asserts that he is being denied due process because CIPA imposes unilateral burdens on him. I reject defendant's attempt to analogize his burdens under CIPA to the situation in Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), in which the defendant was not provided with any discovery. Here, the Government has provided defendant with ample discovery, including nonclassified materials and all classified materials—or summaries of the classified materials—that arguably comprise exculpatory information. Further, "numerous courts have held that CIPA's burdens are not one-sided." Bin Laden, 2001 WL 66393, at *5 (collecting cases); see also United States v. Ivy, No. 91-00602-04, 1993 WL 316215, at *4–5 (E.D. Pa. Aug. 12, 1993) (holding that CIPA does not violate a defendant's due process rights because the balance of discovery does not weigh against the defendant). As a result, I do not find that CIPA's discovery requirements and procedures violate defendant's right to due process.

## B. Defendant's Sixth Amendment Rights Are Not Violated

 Similar to his argument at to why his right to present a defense is violated, defendant claims that the Protective Order violates his Sixth Amendment right to assistance of counsel because it prevents him from assisting his attorneys in identifying relevant and exculpatory evidence within the classified materials. Although the protective order places a restriction on defense counsel's ability to consult with defendant, "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." Morris v. Slappy, 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983); see also United States v. Padilla, 203 F.3d 156 (2d Cir. 2000) (finding no constitutional violation where defense counsel was prohibited from revealing to defendants an ongoing investigation into alleged jury and witness tampering). The Court must consider whether there is an "important need to protect a countervailing interest" that justifies the restriction on the defendant's ability to consult with his attorney and whether "the restriction is carefully tailored and limited." In re Terrorist Bombings, 552 F.3d at 128–29 (quoting United States v. Triumph Capital Grp., Inc., 487 F.3d 124, 129 (2d Cir. 2007).

The restriction on defense counsel's ability to consult with defendant in this case is practically identical to that in In re Terrorist Bombings. In that case, the Second Circuit held that a defendant's Sixth Amendment right to counsel was not violated when his attorneys were prevented from discussing classified discovery materials with him. The Court found that the need to prevent unauthorized disclosure of classified information to a defendant charged with terrorist crimes, where such disclosure could place lives in danger, outweighed the defendant's interests in discussing the materials with counsel. 552 F.3d at 128; see also United States v. Ahmed, No. 10 Cr. 131, 2011 WL 4915005, at *4 (S.D.N.Y. Sept. 23, 2011) (finding that the defendant's Sixth Amendment right to counsel was not violated by a protective order permitting defense coun-

sel, but not defendant, to review the classified materials).

Defendant suggests that the situation is different here·because there is no danger in disclosing his own statements to him. However, as discussed above, the Government has an interest in protecting the source, methods, and relationships used to obtain the communications, and there is a real and palpable danger that production of the communications would "expose ... matters which, in the interest of national security, should not be divulged." Aref, 533 F.3d at 80.

Further, defendant's argument that he needs to review the classified materials so that he can assist defense counsel, whose understanding of the materials is impeded by the language and cultural barriers involved in this case, is unpersuasive. Although there may be cultural and linguistic barriers, counsel is able to consult with defendant on these issues without specifically discussing the classified materials in this case. And, as defense counsel acknowledges in their brief in support of this motion, the Government has provided defense counsel with English translations of classified materials originally in a foreign language. Moreover, as discussed above, defendant's claim that he could identify relevant evidence and explain the classified evidence to counsel is too hypothetical and speculative to find that the application of CIPA is unconstitutional in this case.

 Defendant also claims that he is deprived of his right to confront the evidence and witnesses against him because he may be in a superior position to recognize the potential value of the classified materials for cross-examination. The Confrontation Clause, however, "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Van

Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) (emphasis omitted); see also Fuller v. Gorczyk, 273 F.3d 212, 219 (2d Cir. 2001) ("The right to cross-examine is not absolute ....") For the reasons given above, any benefit by having the defendant view classified materials is merely speculative. Additionally, because the Government is not offering any of the classified statements into evidence, defendant's statements are not likely to be relevant or useful for cross-examination, and therefore, even if defendant reviewed them, he would not be in a better position' to assist with cross-examination.

 Next, defendant contends that his right to be present at crucial proceedings in his trial, as guaranteed by the Fifth and Sixth Amendment, is violated because the Protective Order prevents him from attending hearings where classified materials will be discussed. A defendant has a constitutional due process right to be present to the extent that "a fair and just hearing would be thwarted by his absence ...." United States v. Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985). As with many of defendant's claims, the Second Circuit has already rejected this argument in In re Terrorist Bombings, 552 F.3d at 130, holding that the exclusion of the defendant from a hearing where classified information was discussed did not violate his due process right to be present because his presence would have been unhelpful as the matters discussed did not relate to the defendant's guilt or innocence.. The Second Circuit found that it was sufficient that the defendant's attorneys were present at the hearing to represent his interests. Id.

The analysis is identical here. Defendant's presence would be unhelpful, and his conduct at prior conferences in this matter demonstrates that if he were permitted to attend, he would only be disrup-

tive. Defendant is represented by three highly experienced and competent defense attorneys who have the proper security clearances and will be present at the hearing to participate on his behalf.

Relatedly, defendant claims that because he is barred from participating in classified hearings and assisting counsel in designating classified information that the defense reasonably intends to disclose at trial pursuant to CIPA Section 5, he is deprived of the right to personally assist in the preparation and presentation of his defense. This argument is without merit, and defendant's reliance on Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) is misplaced. Although the Supreme Court held that a defendant has the right "to make one's own defense personally," id. at 819, 95 S.Ct. at 2533, Faretta was decided in the context of a defendant who sought to represent himself. Indeed, the Court acknowledged in Faretta that when a defendant is represented by an attorney, the law may allocate to counsel the power to make binding decisions regarding defendant's case. Id. at 820–21, 95 S.Ct. at 2533–34. Because the Court has already established that the limitations on defendant's ability to consult with counsel are legitimate, this claim is also rejected.

## CONCLUSION

The defense drastically overstates the prejudice to defendant in not having access to his classified communications and statements; neither defendant's Fifth nor Sixth Amendment rights are violated by the application of CIPA in this case. Defendant's motion is denied.

**SO ORDERED.**