James **BENN**, Petitioner-appellee,

v.

Charles **GREINER**, Respondent-appellant.

**Docket No. 04–0527–PR.**

United States Court of Appeals, Second Circuit.

Argued: Jan. 3, 2005.

Decided: March 9, 2005.

---

Barry Gene Rhodes, Brooklyn, NY, for petitioner-appellee.

Amy Appelbaum, Assistant District Attorney, Kings County, N.Y. (Charles J. Hynes, District Attorney of Kings County, Leonard Joblove, Assistant District Attorney, on the brief), for respondent-appellant.

Before: FEINBERG, WINTER and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Respondent-appellant Charles Greiner, superintendent of the Sing Sing Correctional Facility ("appellant"), appeals from a judgment of the United States District Court for the Eastern District of New York (Weinstein, J.) entered on December 19, 2003, granting a writ of habeas corpus to petitioner-appellee James Benn ("Benn"). *See Benn v. Greiner*, 294 F.Supp.2d 354 (E.D.N.Y.2003). The district court found that Benn's Sixth and Fourteenth Amendment rights were violated when, during his trial for sodomy and attempted rape, the trial court curtailed cross-examination of the complaining witness regarding her past allegations of sexual abuse by members of her family and a non-relative. Because we conclude that any such error by the trial court was harmless, we reverse the district court's grant of the writ.

## BACKGROUND

### 1. *Benn's trial and conviction*

In June, 1992, after a jury trial in the Kings County Supreme Court, Benn was convicted principally of one count each of sodomy in the first degree, N.Y. Penal Law § 130.50(1), and attempted rape in the first degree, N.Y. Penal Law §§ 110.00, 130.35(1). He was sentenced principally to eight and one-third to twenty-five years on the sodomy count and five to fifteen years on the attempted rape count, with the sentences to run consecutively. Benn remains in state custody pursuant to that sentence.[1]

Early in Benn's trial, the prosecution moved *in limine* to exclude questioning of the complainant, "P.M.," regarding prior allegations that family members had sexually assaulted her and one allegation (made after the date of Benn's alleged assault) that a non-relative had sexually assaulted her. The source of the prosecution's information regarding these allegations was the medical records of P.M., who suffered from schizophrenia. Defense counsel proffered that he believed these accusations were false because of P.M.'s history of hallucinations and delusions of persecution and his unconfirmed belief that no criminal charges were filed in connection with any of these claims. Apparently accepting the prosecution's argument that questioning concerning these charges would be improper under New York's rape shield law, N.Y.Crim. Proc. Law § 60.42, the trial court granted the motion *in limine* after inquiring if the defense had any other basis than P.M.'s mental illness to suppose

---

1. Benn was also convicted of one count of second-degree assault, N.Y. Penal Law § 120.05(6), and two counts of criminal possession of a weapon in the fourth degree, N.Y. Penal Law § 265.01(2). He was sentenced to a term of imprisonment of two and one-third to seven years on the assault count, to run concurrently with the sentences on the sodomy and attempted rape counts. He was sentenced to conditional discharge on the weapons counts.

that the allegations were false. It ruled that defense counsel could elicit information concerning hallucinations and past alleged assaults, but not the specific allegations of sexual abuse.

P.M. admitted at trial that she had suffered from schizophrenia since 1984. At the time of the attack at issue at trial, she was taking psychotropic drugs which controlled but did not completely suppress hallucinations that she would otherwise experience. She testified that she had received inpatient treatment in the past following suicidal feelings, and that she had experienced hallucinations of demonic possession, of her throat being cut, and of unknown people following or attempting to control her. She admitted having used marijuana and cocaine in the past but denied using non-prescription drugs after 1987 and denied abusing alcohol. She admitted that in 1989, she pleaded guilty to sexual abuse in the first degree for placing her four-year-old nephew against her naked breast. She testified that she had never filed a criminal complaint against another person besides Benn.

With respect to the charged conduct, P.M. testified that on the night of the attack, Benn, who was unknown to her, approached her on the street and asked her if she smoked crack and wanted to hang out. He then grabbed and kissed her and, when she resisted, pulled and dragged her and then marched her along the street, holding a screwdriver to her throat. Taking her to a darkened building entryway, he threatened her with a small lit blowtorch; while this was happening, P.M., squatting, saw people passing by on the sidewalk and extended her hand toward the door to try to attract their notice silently. Benn subsequently forced her to put her mouth on his penis and, when she struggled, repeatedly punched her, choked her and smashed her head against the floor, possibly causing her to lose consciousness briefly. P.M. testified that, although she was dizzy and disoriented, she believed Benn paused to smoke crack with the blowtorch during the assault. As she lay on the floor, he removed her pants and underwear from one leg, fondled her breast and attempted to insert his penis into her vagina. She began to kick and struggle again and Benn punched her and threatened that he would kill her; as she struggled she rose to her feet. She testified that she was not wearing a hood.

Two sisters and their male friend, none of whom knew either Benn or P.M., testified at trial that they had walked by the entryway during the attack and saw the blowtorch flame. One of the three saw a hand suddenly reach out of the darkness towards her knee. They walked on and, when they met a fourth witness (the sisters' brother) driving toward them, asked him to chase away the people they had seen because they believed they were smoking crack with the blowtorch. The brother drove to the entryway and after yelling at the people inside, he heard a faint cry for help. Illuminating the entryway with his car's headlights, he saw P.M. pinned against the wall as Benn was pulling down her pants and underwear. The other three witnesses returned to the entryway following the brother, and all four witnesses saw Benn, holding a blowtorch, drag P.M. forcibly from the entryway on her knees and saw that her pants and underwear were pulled off of one leg. They saw that her head, neck and knees were injured and that she had leaves in her hair. P.M. cried for help and said that Benn was trying to rape her. None of the witnesses saw Benn force P.M. to put her mouth on his penis.

The witnesses fought with Benn, who brandished a screwdriver that he pulled from his bag, and when Benn fled, the men

pursued him, ultimately subduing him with the assistance of an off-duty corrections officer. The sisters took P.M. to a friend's house and called the police. P.M. testified about the eyewitnesses' intervention consistently with their accounts. A police officer and a physician who saw her shortly after the attack testified that P.M. had extensive injuries to her head, including large bumps, an eye swollen completely shut, and bloody lacerations on her throat and knees. The physician gave expert testimony that the injuries were consistent with being savagely beaten multiple times. He testified that the injuries were inconsistent with falling to the ground face-first because such a fall would not explain the trauma to the back of P.M.'s head. The doctor also testified that P.M. was lucid and in touch with reality and that her pupils did not show clinical signs of cocaine or narcotics use.

Benn testified at trial that P.M. had asked him to buy crack for her and that they smoked it together. He suggested that they should go a motel but she invited him to her place and they continued to smoke crack with the blowtorch as they walked together for twenty minutes before entering the vestibule. When someone approached the vestibule in a car and asked them what they were doing, P.M. became hysterical. Benn testified that he told the stranger, whom he feared might be P.M.'s husband or lover, that she was his woman and pulled P.M., who was fully clothed, from the entryway, at which point she fell face-forward to the ground. Because the people who interrupted them were threatening him, Benn fled. He acknowledged ownership of the screwdriver and blowtorch but denied menacing P.M. with them. He acknowledged that he might have kissed P.M. but denied attempting to rape her or hitting or choking her. He testified that she was wearing a hooded garment and that although he could see

her face he did not notice any facial injuries, bruises or swelling and saw no blood on her face. Benn admitted to a 1983 conviction for attempted sexual abuse for restraining a woman in a car and touching her breast but testified that the complainant had lied and that the encounter was consensual.

### 2. Subsequent state proceedings

Benn timely appealed his conviction to the Appellate Division, Second Department. The Appellate Division denied the appeal by a decision and order dated March 13, 1995. *People v. Benn*, 213 A.D.2d 489, 489, 623 N.Y.S.2d 634 (2d Dept.1995). Of relevance to this appeal, the Appellate Division held that the trial court's decision to restrict cross-examination regarding the victim's previous accusations, though not justified by the rape shield law, was not an improvident exercise of discretion because Benn had not established that the accusations were false. *Id.* The New York Court of Appeals denied Benn's request for leave to appeal on May 19, 1995. *People v. Benn*, 85 N.Y.2d 969, 969, 629 N.Y.S.2d 729, 653 N.E.2d 625 (1995) (Bellacosa, J.).

### 3. The habeas petition

Benn filed the instant *pro se* petition for a writ of habeas corpus on August 21, 1998. Benn argued that the trial court's preclusion of cross-examination regarding P.M.'s other accusations of sexual abuse violated his Confrontation Clause and Due Process rights under the Sixth and Fourteenth Amendments. He also challenged the curtailment of cross-examination regarding P.M.'s conviction for sexual abuse, the imposition of consecutive sentences, and certain remarks the prosecutor made in summation. The state moved to dismiss the petition for failure to comply with the filing deadline under 28 U.S.C.

§ 2244(d)(1).[2] By memorandum and order dated July 21, 2003, the district court ruled that the § 2241(d)(1) time bar was equitably tolled by Benn's mental illness (Benn suffers from chronic schizophrenia). *Benn v. Greiner*, 275 F.Supp.2d 371, 373–74 (E.D.N.Y.2003).

After appointing counsel and entertaining oral argument, the district court granted the habeas petition by opinion and order dated December 3, 2003. *Benn*, 294 F.Supp.2d at 369. The court rejected Benn's claims regarding P.M.'s prior conviction, the consecutive sentences and the prosecutor's alleged misconduct at summation. *Id.* at 367–69. As to the claim regarding prior accusations of sexual abuse, the district court, invoking the deferential standard required by 28 U.S.C. § 2254(d),[3] granted the writ based upon its findings (i) that the Appellate Division's conclusion that Benn had not provided a sufficient basis for his assertion that the accusations were false was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 294 F.Supp.2d at 365, and (ii) that the Appellate Division's rejection of the Sixth and Fourteenth Amendment claims were "contrary to and an unreasonable application of clearly established federal law as

determined by the Supreme Court." *Id.* at 366. The court further found that it was a "close call whether, in light of the evident physical trauma suffered by P.M, the [constitutional] error was harmless," but that on balance the government had failed to meet its burden of persuasion that it was. *Id.* at 367. The court accordingly granted the writ. *Id.* This timely appeal followed.

## DISCUSSION

■ We have jurisdiction to review the district court's final judgment under 28 U.S.C. § 2253(a). We review *de novo* the district court's grant of habeas relief, and we review its factual findings for clear error. *Cox v. Donnelly*, 387 F.3d 193, 196 (2d Cir.2004).

We note first that although the district court recited AEDPA's deferential standard for review of state courts' constitutional rulings, *see Benn*, 294 F.Supp.2d at 361–62, we are dubious that its finding of legal error can be justified under that standard. We need not reach the question, however. Even supposing that the district court was correct to find that the Appellate Division's conclusion was contrary to and an unreasonable application of clearly

**2.** Because Benn's conviction became final before April 24, 1996, he was required to file his petition on or before April 24, 1997. *See Hizbullahankhamon v. Walker*, 255 F.3d 65, 69 (2d Cir.2001).

**3.** As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, § 104, 110 Stat. 1214, 1219, section 2254(d) of 28 U.S.C. provides that

[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Such deference is required "even if," as here, "the state court does not explicitly refer to either the federal claim or to relevant federal case law" in addressing the merits of the claim. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir.2001).

established federal law, the district court's further finding that the error was not harmless was itself clearly in error.

We have previously reserved the question of what standard of review we should apply in the wake of AEDPA when determining whether a non-structural trial error challenged on collateral review is harmless when the state courts do not themselves reach the harmlessness question. *See Gutierrez v. McGinnis*, 389 F.3d 300, 306–07 & n. 7 (2d Cir.2004); *see also Rosa v. McCray*, 396 F.3d 210, 225–26 (2d Cir. 2005) (Straub, J., concurring in part and dissenting in part); *Santana–Madera v. United States*, 260 F.3d 133, 140 (2d Cir. 2001). As we noted in *Gutierrez*, 389 F.3d at 306 n. 7, the Supreme Court, in dicta in *Penry v. Johnson*, 532 U.S. 782, 795–96, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001), has applied the standard elaborated in *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), under which the state may establish that the error was harmless on collateral review by showing that the error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710 (internal quotation and citation omitted); *see also Lainfiesta v. Artuz*, 253 F.3d 151, 158 (2d Cir.2001) (noting that "[t]he burden of persuasion is on the government" in harmless error analysis under *Brecht*). Another possibility is that, even in the absence of a state court adjudication of harmlessness, we apply AEDPA's deferential standard of review and inquire whether the state court's affirmance of the conviction is contrary to or an unreasonable application of the harmlessness standard elaborated in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under *Chapman*, which applies generally to direct appellate review of criminal convictions, "the [appellate] court must be able to declare a belief that [the

error] was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. 824; *see Rosa*, 396 F.3d at 225 (Straub, J., concurring in part and dissenting in part). Yet a third possibility is that we simply apply the more defendant-friendly *Chapman* standard directly. *See Cotto v. Herbert*, 331 F.3d 217, 253–54 (2d Cir.2003); *Santana–Madera*, 260 F.3d at 140. Because these standards all produce the same result in this case, we do not resolve that open question here. *See Rosa*, 396 F.3d at 226 (Straub, J., concurring in part and dissenting in part).

■ The district court, applying *Brecht*, concluded that the question of harmlessness was close and that "other evidence" adduced at trial might have been sufficient to convict Benn, but nonetheless found that "there is a substantial probability that the jurors might have had a reasonable doubt about P.M.'s credibility and about petitioner's guilt if the trial court had not completely cut off this line of inquiry." 294 F.Supp.2d at 366. While a finding that further cross-examination concerning assertedly false past allegations of rape could have created otherwise non-existent reasonable doubt would satisfy the *Brecht* standard, *see Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir.2000) (citing *Kyles v. Whitley*, 514 U.S. 419, 436, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)), and *a fortiori* would satisfy the contrary-to-*Chapman* standard and the *Chapman* standard itself, *see Gutierrez*, 389 F.3d at 305 n. 6, no such reasonable doubt could have been created here.

■ "In a case like this one, where a reviewing court concludes that the trial judge has improperly curtailed cross-examination, the inquiry is 'whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that

the error was harmless ....'" *Cotto*, 331 F.3d at 253 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)); *see also Fuller v. Gorczyk*, 273 F.3d 212, 221 (2d Cir.2001). The reviewing court should assess "'the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and ... the overall strength of the prosecution's case.'" *Cotto*, 331 F.3d at 254 (quoting *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. 1431). P.M.'s testimony concerning Benn's sexual conduct was certainly important to the prosecution's case as to the rape and sodomy counts, and was non-cumulative. All of the remaining factors, however, overwhelmingly support Benn's conviction and establish that the exclusion of the disputed cross-examination was harmless.

First, P.M.'s testimony about key details of the assault was strongly corroborated. A disinterested eyewitness saw Benn pinning P.M. against the wall with her pants down. Three other disinterested eyewitnesses saw Benn drag P.M. from the vestibule, heard P.M. complain that she had been sexually assaulted, and saw that she was bloodied and partly unclothed, "with old leaves in her hair like she had been thrown on the floor and dragged around a couple of times." *Benn*, 294 F.Supp.2d at 359. The testimony of one of the sisters that she saw a hand reach toward her from the darkness dovetails perfectly with P.M.'s testimony that she reached out for a passerby during the attack. There was no question that Benn possessed the weapons

P.M. described. P.M.'s claim that she was beaten when she resisted was corroborated by testimony that her injuries were consistent with the assault she described. *Id.*

Second, the trial court permitted testimony damaging to P.M.'s credibility on precisely the same evidential hypothesis as the excluded cross-examination. The district court found that the actual falsity of the excluded accusations did not have to be established because P.M.'s "history of drug use, schizophrenia, paranoia, hallucinations and delusional thinking" provided an evidential basis for the argument that both the excluded accusations and the instant one against Benn were false or delusional. *Benn*, 294 F.Supp.2d at 365–66. The jury learned of her mental illness, hallucinations, past child abuse conviction, and prior drug use. *Id.* at 358. The permitted cross-examination thus furnished a basis for the defense to argue that P.M.'s account could not be trusted, and defense counsel made this argument to the jury.

Finally, contrary to the district court's suggestion, the prosecution's case for guilt was in no way weak or marginal. This case did not present a "he said, she said" scenario of two persons, one of whom claimed a sexual encounter was consensual and the other of whom claimed it was not—a scenario in which the exclusion of cross-examination regarding past unverified accusations might well have contributed to the jury verdict in a substantial and injurious way. This was instead a case of a defendant who denied, in the face of all the evidence, that any actual or attempted sexual contact or beating took place and a complainant whose story was corroborated in multiple, critical respects by four disinterested eyewitnesses, physical evidence and police and medical testimony.[4] Evi-

---

**4.** The jury would not necessarily have had to credit Benn's testimony in order to have a reasonable doubt as to his guilt, of course; but it is equally axiomatic that the jury could regard Benn's wildly implausible denial of sexual activity or violence as further proof of

dence that the mentally ill complainant had made rape accusations in the past which did not result in criminal charges could not have created *reasonable* doubt in the face of the overwhelming evidence that the assault she described took place. Because "[w]e think it clear beyond a reasonable doubt that [Benn] would have been found guilty even if [the disputed] cross-examination ... had been allowed," *Fuller,* 273 F.3d at 221, we reverse the district court's grant of the writ.

In light of our holding that Benn's claim lacks merit, we do not reach appellant's additional contention that the district court erred in holding that the statute of limitations under § 2244(d) was tolled due to Benn's mental illness. *See Acosta v. Artuz,* 221 F.3d 117, 122 (2d Cir.2000) (holding that § 2244(d) statute of limitations is not jurisdictional); *Farley v. Sullivan,* 983 F.2d 405, 410 (2d Cir.1993) (disposing of case on merits and declining to reach procedural issues including propriety of equitable tolling of statute of limitations).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED.

his guilt. *See United States v. Payton,* 159 F.3d 49, 56 (2d Cir.1998) ("[B]ecause defendant testified at trial, the jury was entitled to disbelieve his contrary testimony and use its disbelief to add weight to the government's case"); *United States v. Ramirez,* 79 F.3d 298, 306 (2d Cir.1996) ("[T]he jury [i]s entitled to view the improbability of [the defendant's] explanations as further proof of his guilt.").