Israel **VEGA**, Plaintiff,

v.

Brian **FISCHER**, Superintendent, Sing Sing Correctional Facility, Defendant.

No. 04 Civ. 7991(RJH).

United States District Court, S.D. New York.

Dec. 4, 2006.

Israel Vega, Ossining, NY, pro se.

### MEMORANDUM OPINION AND ORDER

HOLWELL, District Judge.

Petitioner Israel Vega brings this habeas petition pursuant to 28 U.S.C. § 2254 challenging his state court conviction for one count of robbery in the first degree, a crime for which he was sentenced to seventeen years. In the petition, petitioner argues that (1) the trial court erred in excluding testimony regarding petitioner's accent, thereby depriving petitioner of the right to present a defense; (2) prosecutorial misconduct during summation deprived petitioner of a fair trial and his right to due process; and (3) he was denied the right to effective assistance of counsel during the lineup and pretrial *Wade* hearing.

On December 14, 2005, Magistrate Judge Theodore H. Katz issued a Report and Recommendation (the "Report") recommending that the petition by denied in its entirety and dismissed with prejudice. Petitioner filed timely objections to the Report (the "Objection"), but for the reasons set forth below, the Court adopts the Report in its entirety and denies the petition [1].

### BACKGROUND

The facts underlying petitioner's trial and incarceration are extensively outlined in the Report, which is attached to this opinion for ease of reference.

## DISCUSSION

■ A district court may designate a magistrate to hear and determine certain motions and to submit to the court proposed findings of fact and a recommendation as to the disposition of the motion. *See* 28 U.S.C. § 636(b)(1). Within ten days of service of the recommendation, any party may file written objections to the magistrate's report. *Id.* The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The court shall make a de novo determination of the portions of the report to which petitioner objects. *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.1997). "The referring district judge may accept those portions of the magistrate judge's report and recommendation to which no specific written objections are made, provided there is no clear error on the face of the record." *Doe v. Goord*, 2006 WL 1041130, at *2, 2006 U.S. Dist. LEXIS 21074, No. 04 Civ. 570(GBD) (S.D.N.Y. Apr. 18, 2006) (emphasis supplied).

■ In his Objections, petitioner specifically takes issue with the Report's conclusion that the trial court did not violate his right to present a defense by excluding evidence that petitioner does not speak with a Spanish accent on the theory that testimony regarding petitioner's accent "would have been both unreliable and of limited probative value." Petitioner also objects to the Report's determination that the prosecutor's remarks in summation did not deprive him of a fair trial and of his rights of due process, assistance of counsel, and confrontation. Finally, Petitioner objects to the Report's conclusion that Ferreira's failure to take a more active role during the lineup and Marengo's failure to lay a proper foundation to call a witness to the lineup at the *Wade* hearing denied Petitioner his constitutional right to effective assistance of counsel. However, petitioner's arguments merely reiterate the claims made in his original petition. "If no objections are filed, or where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition, reviewing courts should review a report and recommendation for clear error." *Edwards v. Fischer*, 414 F.Supp.2d 342, 346–47 (S.D.N.Y.2006) (internal quotation marks and citations omitted). Nonetheless, for the reasons stated in the Report, the claims are properly denied even on de novo review.

## DISCUSSION

Petitioner filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104–132, 110 Stat. 1214 (April 24, 1996). Thus, this Court applies the standard of review established by Section 2254(d) of AEDPA. *Torres v. Berbary*, 340 F.3d 63, 67–68 (2d Cir.2003); *Vasquez v. Strack*, 228 F.3d 143, 147 (2d Cir.2000). Under AEDPA, a federal court may grant a petition for habeas corpus, notwithstanding contrary state court adjudication on the merits, in accordance with the following provisions:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1. *Exclusion of Evidence Regarding Petitioner's Accent*

It is well established that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Therefore, habeas petitioners must show that an allegedly erroneous state court evidentiary ruling violated a recognized constitutional right. *See, e.g., Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir.1987) ("The court must determine whether the exclusion was an error of constitutional dimension, and whether that constitutional error was harmless beyond a reasonable doubt.").

■ Here, any alleged error made by the state court in excluding Ferreira's testimony regarding petitioner's accent was not an error of constitutional dimension. Evidence of petitioner's accent would have been of limited value, since defendant could have faked his accent, and such evidence would not have undermined the validity of the Kim's identification of him in the lineup. *See People v. Veal*, 158 A.D.2d 633, 635, 551 N.Y.S.2d 602 (N.Y.App.Div. 1990) (finding trial court "did not improvidently exercise its discretion by precluding the defendant from providing a voice exemplar to establish that he had a southern drawl rather than a Jamaican accent" because "the complainant's identification of the defendant was not based upon his voice; and there was a possibility that the Jamaican accent could be faked"); *People v. Whitmore*, 190 A.D.2d 703, 704, 593 N.Y.S.2d 281 (N.Y.App.Div.1993) ("Voice exemplar evidence is not admissible as of

right but lies within the sound discretion of the Trial Judge."). Kim's identification of petitioner was based on approximately twenty minutes' observation of her assailant, and she testified that she "got to see him," and that she had an unobstructed view of him. (Trial Tr. at 17, 25.) In addition, petitioner's ex-girlfriend testified that petitioner told her shortly after Kim was robbed that "he robbed a woman for a cell phone" in the same location where Kim was robbed. (*Id.* at 141–42.) In light of this testimony, any testimony by Ferreira as to whether petitioner spoke with an accent would not have given rise to "reasonable doubt" that petitioner robbed Kim. Therefore, the state court's exclusion of the evidence did not violate petitioner's right to present a defense, and the state Appellate Division's holding that any error was "harmless in light of the overwhelming evidence of [petitioner's] guilt," *People v. Vega*, 304 A.D.2d 394, 395, 756 N.Y.S.2d 849 (N.Y.App.Div.2003), was not an unreasonable application of federal law. *Cf. Benn v. Greiner*, 402 F.3d 100, 105–07 (2d. Cir.2005) (denying habeas relief where excluded evidence could not have created reasonable doubt in the face of overwhelming evidence of guilt); *Gutierrez v. McGinnis*, 389 F.3d 300, 306, 308 (2d Cir.2004) (explaining that whether evidentiary error was harmless turns on, among other things, importance of the excluded evidence, whether it was cumulative, the presence or absence of corroboration of the evidence, and the overall strength of the case). Accordingly, the Court dismisses petitioner's claim that he was deprived of the right to present a defense.

### 2. *Prosecutorial Misconduct*

■ The Appellate Division's denial of petitioner's prosecutorial misconduct claims was not an unreasonable application of federal law. Attorneys are afforded "broad latitude . . . in commenting on evi-

dence during summation," *United States v. Bautista,* 23 F.3d 726, 734 (2d Cir.1994). "A writ of habeas corpus will not issue on the basis of prosecutorial misconduct during summation unless such conduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). To prevail, petitioner here "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully,* 41 F.3d 818, 824 (2d Cir.1994). Relevant factors in this determination include the existence of substantial prejudice include the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the improper statements. *Floyd v. Meachum,* 907 F.2d 347 (2d Cir.1990).

Petitioner objects to three statements made by the prosecutor during her summation. First, petitioner claims that the prosecutor improperly "suggested that ... it was [petitioner's] former attorney's job to lie on the witness stand for his client." (Pet. at 8.). In discussing the testimony given for the defense by petitioner's former attorney, Daniel Ferreira, the prosecutor stated, "[I]n our criminal justice system, ... your own mother can turn her back on you when you're arrested but a defense attorney cannot. It is his duty to represent your rights...." (Trial Tr. at 451.) However, these remarks do not on their face allege that Ferreira lied on the witness stand to protect his former client. Moreover, they are reasonably construed as a rebuttal to defense counsel's summation, in which he stated:

> Mr. Ferreira testified regarding this line-up. As a defense attorney at this line-up, he's a passive observer. Passive meaning he doesn't do anything, an ob-

server is just there to look. He's not there to change anybody's seat. If he believes that this woman heard Seat Number 3, that's not his job, I submit to you, as a passive observer....

(*Id.* at 446.) The prosecutor was permitted to rebut defense counsel's suggestion that the defense attorney was not permitted to request that the lineup be rearranged after he was told what position petitioner occupied. *See Escobar v. Senkowski,* No. 02 Civ. 8066(LAK)(THK), 2005 WL 1307939, at *14 (S.D.N.Y. May 26, 2005) (allowing prosecutorial "leeway" in arguing against credibility of witnesses when responding to defense summation). That she did so did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process."

Second, petitioner objects to the prosecutor's characterization of People's witnesses Kim and Mendez as "hav[ing] everything to lose by exposing themselves to [petitioner]." (*Id.* at 451.) Petitioner contends that this suggested to the jury that he might "in some manner hurt the witnesses for testifying against him." (Objection 8.) However, as the Appellate Division noted, this statement can also be understood as a fair response to the defense's attempt to undermine the credibility of Kim's identification of petitioner and his ex-girlfriends testimony. *Vega,* 304 A.D.2d at 395, 756 N.Y.S.2d 849.

Finally, petitioner argues that "the most egregious statement to the jury of all" was the prosecutor's claim in summation that "[t]he defense wants you to believe that Israel Vega was framed, that Melinda Mendez, Susan Kim, and the 50th precinct got together and came up with a story that corroborated each other and brought you to the same point, all to frame him." (Trial Tr. at 469.) Petitioner argues that this statement was "hyperbole" that "over-

stated the defendant's arguments" and "may have influenced the jury." (Objection 9.)

Petitioner is correct that his defense at trial was misidentification, not that he was framed. However, defense counsel argued in summation that the lineup was "bad, suggestive, [and] tainted." (Trial Tr. at 443.) He also argued that Kim was "a very bright woman" and "educated," and asked the jury to consider why she might change details in her story of what happened between the time that she first reported the incident to the police and her testimony at trial. (*Id.* at 429–30). He then answered this question by suggesting to the jury that Kim was lying: "So why the changes in her story now? I submit to you, to justify her picking Mr. Vega, she's not going to back down today, she's not going to change her mind." (*Id.* at 439; *see also id.* at 443.) Thus, although the prosecutor's characterization of petitioner's defense was hyperbole, her statements were a fair response to defense counsel's attempts to undermine the credibility of the prosecution's witnesses. *See United States v. Tocco,* 135 F.3d 116, 130 (2d Cir.1998) ("[W]here the defense summation makes arguments and allegations against the government, the prosecutor may respond to them in rebuttal."); *United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir.1981) ("Among the elements weighed in this inquiry are the extent to which the misconduct was intentional and the extent to which the statements were made in response to defense contentions."). Furthermore, the trial judge reminded the jury that any assertion made by counsel during summation is only an assertion, and not a fact. (Trial Tr. at 475.) "As the Supreme Court has frequently observed, the law recognizes a strong presumption that juries follow limiting instructions," *United States v. Snype,* 441 F.3d 119, 129 (2d Cir.2006) (citations omitted), and there

is no reason in this case to believe that the jury would not have convicted if the statement had not been made. *See United States v. Thomas,* 377 F.3d 232, 245 (2d Cir.2004) ("Even if the [prosecutor's] comments were improper, they did not cause [the defendant] substantial prejudice. . . . The alleged misconduct, if any, was not severe in this case[, the district judge] provided an immediate curative instruction [and] . . . it is highly likely [the defendant] would have been convicted even in the absence of the prosecutor's remarks.").

For these reasons, the Court holds that the Appellate Division's finding that "[t]he challenged portions of the prosecutor's summation constituted fair responses to [petitioner's] summation and did not deprive [petitioner] of a fair trial," *Vega,* 304 A.D.2d at 395, 756 N.Y.S.2d 849, was neither objectively unreasonable nor an unreasonable application of federal law. Petitioner's claims based on prosecutorial misconduct are dismissed.

### 3. *Assistance of Counsel*

█ The Appellate Division did not unreasonably apply *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in denying petitioner's claim of ineffective assistance of counsel. Under *Strickland,* defense counsel is judged ineffective when: (1) counsel's performance falls below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687–694, 104 S.Ct. 2052; *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir.2001) ("The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard."). Even assuming, for the sake

of argument, that Ferreira's failure to insist that the lineup be rearranged after he was told what position petitioner occupied was objectively unreasonable, the error was not prejudicial. Kim had ample time to observe petitioner during the robbery, and she testified at the *Wade* hearing that she heard no conversations about the lineup. (*See* Wade Tr. at 14, 19–21, 35–36.) The *Wade* hearing court found her testimony credible. If Kim did not overhear petitioner's location in the lineup, rearranging the lineup would have had no impact. Thus, because there is no reason to believe that Ferreira's failure to act affected the outcome of the identification procedure or trial, petitioner cannot satisfy the second prong of *Strickland.*

■ Marengo's failure to lay a proper foundation to call Assistant District Attorney Friedman as a witness clearly "[fell] below an objective standard of reasonableness based on prevailing professional norms," and thus petitioner has satisfied *Strickland's* first prong. Nevertheless, petitioner has not demonstrated "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." At the *Wade* hearing, the state court heard testimony from Kim that she did not speak with Friedman, and from Ferreira that Friedman did speak with Kim and that she told him that she overheard something at the lineup. As the *Wade* hearing court stated that "the People didn't object to Ferreira's second-hand hearsay, so whatever you think you can get out of Friedman is already there on the record without objection." (*Id.* at 127.) After considering the conflicting evidence in the record, the court found Kim's testimony credible. But even if Marengo been successful in impeaching Kim's testimony with Friedman's, the prosecution could still have relied on Kim's in-court identification of petitioner. Therefore, petitioner cannot demonstrate a reasonable probability that, but for Marengo's unprofessional errors, the result of the proceeding would have been different. *See People v. Henry,* 297 A.D.2d 585, 586, 748 N.Y.S.2d 2 (N.Y.App.Div.2002) (finding effective assistance of counsel despite failure to lay the proper foundation to impeach an alleged prior inconsistent statement); *People v. Newton,* 138 A.D.2d 415, 416, 525 N.Y.S.2d 699 (N.Y.App.Div.1988) (same).

■ Finally, Marengo's overall performance was not ineffective. *See Lindstadt,* 239 F.3d at 203 (acknowledging difficulty of satisfying *Strickland* standard, but finding it satisfied where "the cumulative weight of error" convinced the court "that the ineffectiveness of counsel reached the constitutional threshold"). He devised a trial strategy that included coloring Kim's lineup identification as a case of mistaken identity and suggested that petitioner's ex-girlfriend's testimony was a recent fabrication. Given that petitioner has demonstrated only one error by defense counsel, and has not demonstrated a reasonable probability that the outcome of the trial was affected by this error, the Court cannot say that the Appellate Division applied *Strickland* in an objectively unreasonable manner. Accordingly, the court dismisses petitioner's claim based on ineffective assistance of counsel.

## CONCLUSION

For the reasons set forth above, the Report and Recommendation of Magistrate Judge Theodore H. Katz is adopted, and the petition for a writ of habeas corpus is denied. In addition, the Court declines to issue a certificate of appealability. Petitioner has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. *See* 28 U.S.C. § 2253(c)(2); *Lucidore*

*v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000) (stating that a certificate of appealability is properly issued when a petitioner has shown "that the issues involved in his case 'are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.' " (citations omitted)). The Court also finds, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of Court is directed to dismiss the petition [1].

SO ORDERED.